## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Roanoke Division

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:25-cv-00846-TTC |
| | ) | |
| | ) | |
| VIRGINIA POLYTECHNIC INSTITUTE | ) | |
| AND STATE UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS'**
**MOTIONS TO DISMISS (Docs. 40, 42, 44, 46, 48, 50, 52)**

Parker Bowman, VSB No. 100389
Lindsay R. McKasson, VSB No. 96074
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
parker@binnall.com
lindsay@binnall.com

James Fraser (admitted pro hac vice)
P.O. Box 3092
Annapolis, MD 21403
Tel. (443) 254-5115
jcfraser70@outlook.com

*Counsel for Plaintiff John Doe*

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................... i

TABLE OF AUTHORITIES .............................................................................. iii

ARGUMENT .................................................................................................... 1

I.   Virginia Tech concedes that Plaintiff adequately pleads his Title IX "erroneous outcome" claims ............................................................................................ 1

II.  VT's concession on Plaintiff's erroneous outcome claims is fatal to several of Defendants' other motions to dismiss and to the Defendant Investigator, Hearing Officer, and Appellate Officers' assertions of qualified immunity. .... 1

III. Plaintiff adequately pleads his Title IX "deliberate indifference" claims ......... 2

IV.  Plaintiff adequately pleads his Fourteenth Amendment due process claims. . 5

   a.  Defendants concede that Plaintiff adequately pleads a liberty interest in his good name and reputation. ............................................................... 5
   b.  Plaintiff adequately pleads a property interest in his continued enrollment at Virginia Tech. ..................................................................... 6
   c.  Plaintiff adequately pleads that the Defendant Investigators, Hearing Officers, and Appellate Officers violated his right to substantive due process ................................................................................................... 9
   d.  Plaintiff adequately pleads his procedural due process claims ............ 14

V.   Defendants are not entitled to qualified immunity on Plaintiff's due process claims ............................................................................................................ 15

   a.  Defendants violated Plaintiff's clearly established statutory (Title IX) right to be free of sex discrimination in a federally funded educational program ......................................................................................................... 17
   b.  Defendants violated Plaintiff's clearly established constitutional due process rights ............................................................................................ 18

VI.  Plaintiff adequately pleads his equal protection claims ................................. 20

VII. Eleventh Amendment immunity does not bar Plaintiff's claims for injunctive relief. ............................................................................................................ 22

VIII. Plaintiff adequately pleads his "gross negligence" and "willful and wanton negligence" claims. .......................................................................... 24

CONCLUSION .................................................................................................. 27

CERTIFICATE OF SERVICE ........................................................................ 28

# TABLE OF AUTHORITIES

### Cases

*Abbarrio v. Hamline Univ. School of Law,*
    258 N.W.2d 108, 111 (Minn. 1977) .......................................................................... 10

*Baker v. McCall,*
    842 F. Supp. 2d 938, 943 (W.D. Va. 2012) .................................................................. 9

*Barnes v. Zacahry,*
    669 F.3d 1295, 1304-05 (11th Cir. 2012) .................................................................... 6

*Burns v. Reed,*
    500 U.S. 478, 496 (1991) ............................................................................................ 26

*C.G. v. City of New York,*
    635 F. Supp. 2d 152, 182 (E.D.N.Y. 2009) ................................................................ 18

*Cf. Diamond Alternative Energy, LLC v. EPA,*
    606 U.S. 100, 108 (2025) .............................................................................................. 1

*Cf. Gebser v. Lago Vista Independent School Dist.,*
    524 U.S. 274, 277 (1998) .............................................................................................. 4

*Cnty. of Sacramento v. Lewis,*
    523 U.S. 833, 840 (1998) ......................................................................................... 9, 10

*Cooper v. Doyle,*
    163 F.4th 64, 79 (4th Cir. 2025) ................................................................................ 16

*Danam v. Grand Canyon Univ.,*
    2024 WL 4850490, *13 (Ariz. App. Nov. 21, 2024) ................................................... 10

*Dillow v. Virginia Tech,*
    2023 WL 5925543 (W.D. Va. Sept. 12, 2023) .............................................................. 1

*Doe v. Alger,*
    175 F. Supp. 3d 646 (W.D. Va. 2016) .......................................................................... 8

*Doe v. Alger,*
    228 F. Supp. 3d 713, 725 (W.D. Va. 2016) .................................................................. 6

*Doe v. Dordt Univ.*,
    616 F. Supp. 3d 872, 907 (N.D. Iowa 2022).............................................................. 9

*Doe v. Miami Univ.*,
    882 F.3d 579, 604-05 (6th Cir. 2018) ....................................................................... 16

*Doe v. The Citadel*,
    2022 WL 2806473, *5 (D.S.C. Jul. 18, 2022) ......................................................... 9

*Doe v. UNC*,
    133 F.4th 305 (4th Cir. 2025)............................................................................ 5, 23

*Doe v. Virginia Tech*,
    2020 WL 1309461 (W.D. Va. Mar. 19, 2020) ........................................................ 1

*Doe v. Virginia Tech*,
    2024 WL 1417997 (W.D. Va. Apr. 2, 2024)........................................................... 1

*Doe v. Virginia Tech*,
    2024 WL 141977, *12 (W.D. Va. Apr. 2, 2024) .................................................... 7

*Doe v. Virginia Tech*,
    2024 WL 4310873, *14 (W.D. Va. Sept. 26, 2024)................................................ 7

*Doe v. Virginia Tech*,
    400 F. Supp. 3d 479 (W.D. Va. 2019) .................................................................... 1

*Dudley v. Offender Aid and Restoration of Richmond, Inc.*,
    401 S.E.2d 878, 883 (Va. 1991) ............................................................................ 25

*Ex Parte Young*,
    209 U.S. 123 (1908) ............................................................................................... 22

*FDIC v. Cocke*,
    7 F.3d 396, 402 (4th Cir. 1993) ............................................................................ 15

*Gelin v. Balt. Cnty.*,
    132 F.4th 700, 709 (4th Cir. 2025)........................................................................ 17

*Gilliam v. Sealey*,
    932 F.3d 216, 235 (4th Cir. 2019) ................................................................... 16, 19

*Guidry v. Our Lady of the Lake Nurse Anesthesia Program*,
    170 So.3d 209, 215 (La. App. 2015) ..................................................................... 10

*Hafer v. Melo*,
   502 U.S. 21, 31 (1991) .................................................................................. 16

*Hammock v. Watts*,
   146 F.4th 349, 364 (4th Cir. 2026).............................................................. 17

*Harlow v. Fitzgerald*,
   457 U.S. 800, 818 (1982) ............................................................................ 16

*Hubbard v. Virginia*,
   661 S.E.2d 464, 466 (2008) ........................................................................ 18

*Iko v. Shreve*,
   535 F.3d 225, 238 (4th Cir. 2008) ............................................................. 16

*Jackson v. Virginia*,
   443 U.S. 307, 313-316 (1979) .................................................................... 18

*Kashdan v. George Mason Univ.*,
   70 F.4th 694, 701 (4th Cir. 2023)................................................................ 2

*Khalaf v. Saint Louis Univ.*,
   2025 U.S. Dist. LEXIS 147160, *13 (E.D. Mo. Jul. 31, 2025)................. 10

*Louisville & Nashville R.R. Co. v. O'Neill*,
   89 S.E. 862, 866 (Va. 1916) ....................................................................... 25

*Ortegel v. Virginia Tech*,
   2023 WL 8014237 (W.D. Va. Nov. 20, 2023) ........................................ 1, 7

*Palsgraf v. Long Island R.R. Co.*,
   162 N.E. 99, 100 (N.Y. 1928) .................................................................... 25

*Quisenberry v. Huntington Ingalls Inc.*,
   818 S.E.2d 805, 810 (Va. 2018).................................................................. 25

*RGR, LLC v. Settle*,
   764 S.E.2d 8, 16 (Va. 2014) ....................................................................... 25

*Rodgers v. Tolson*,
   582 F.2d 315, 319 (4th Cir. 1978) ............................................................. 19

*Schiebel v. Schoharie Cent. Sch. Dist.*,
   120 F.4th 1082, 1097 (2d Cir. 2024) ........................................................... 2

*Sheppard v. Visitors of Virginia State Univ.*,
   993 F.3d 230, 234-236 (4th Cir. 2021) ............................................................. 17

*Snider Int'l Corp. v. Town of Forest Heights*,
   739 F.3d 140, 145 (4th Cir. 2014) ...................................................................... 9

T.Z. v. City of New York,
   634 F. Supp. 2d 263 (E.D.N.Y. 2009)................................................................. 18

*Washington v. Housing Authority of the City of Columbia*,
   58 F.4th 170, 178 (4th Cir. 2023) ..................................................................... 10

### Statutes

20 U.S.C. § 1681(a) ................................................................................................ 17

42 U.S.C. § 1983..................................................................................................... 23

Va. Code § 23.1-2603(B)......................................................................................... 22

Va. Code. § 23.1-412 .......................................................................................... 6, 7

### Treatises

Cook & Sobieski, 1 Civil Rights Actions ¶ 2A.06[A][1] (Dec. 2024)....................... 16

Friend, Personal Injury Law in Virginia § 1.1.1 ................................................... 26

Plaintiff files this combined opposition to Defendants' motions to dismiss. In support of his opposition, Plaintiff states as follows.

## ARGUMENT

### I.   Virginia Tech concedes that Plaintiff adequately pleads his Title IX "erroneous outcome" claims.[1]

Defendant Virginia Polytechnic Institute and State University ("VT") does not move to dismiss Plaintiff's Title IX erroneous outcome claims. VT's failure to move to dismiss the erroneous outcome claims is no oversight. To the contrary, because VT typically moves to dismiss erroneous outcome claims,[2] its failure to do so here is "the proverbial dog that did not bark"—*i.e.*, a concession that Plaintiff adequately pleads erroneous outcomes claims. *Cf. Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 108 (2025).

### II.   VT's concession on Plaintiff's erroneous outcome claims is fatal to several of Defendants' other motions to dismiss and to the Defendant Investigator, Hearing Officer, and Appellate Officers' assertions of qualified immunity.

Plaintiff notes in his Complaint (¶ 114) that to adequately plead an erroneous outcome claim a plaintiff must allege facts showing that "(1) he was subjected to a procedurally flawed or otherwise flawed proceeding; (2) which lead to an adverse and

---

[1] Counts XV and XXXI.

[2] *See, e.g.*, *Doe v. Virginia Tech*, 2024 WL 1417997 (W.D. Va. Apr. 2, 2024); *Ortegel v. Virginia Tech*, 2023 WL 8014237 (W.D. Va. Nov. 20, 2023); *Dillow v. Virginia Tech*, 2023 WL 5925543 (W.D. Va. Sept. 12, 2023); *Doe v. Virginia Tech*, 2020 WL 1309461 (W.D. Va. Mar. 19, 2020); *Doe v. Virginia Tech*, 400 F. Supp. 3d 479 (W.D. Va. 2019).

erroneous outcome, and (3) involved particular circumstances that suggest gender bias" was "a but for cause of the erroneous outcome." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023).

As discussed further below, by conceding that Plaintiff pleads facts that would establish the elements of his Title IX erroneous outcome claims, VT concedes that Plaintiff pleads facts that support elements of several of Plaintiff's other claims, including his Title IX "deliberate indifference" claims, his substantive due process claims, and his claims for "gross negligence" and "willful and wanton negligence."

And as discussed further below, by conceding that Plaintiff adequately pleads his Title IX erroneous outcome claims, VT concedes that the Defendant Investigators, Hearing Officers, and Appellate Officers are not entitled to qualified immunity on Plaintiff's due process claims.

## III.    Plaintiff adequately pleads his Title IX "deliberate indifference" claims.[3]

Plaintiff explains in his Complaint (¶¶ 108, 110-111, 116-117) that a student may bring a Title IX "deliberate indifference" claim where a university "was deliberately indifferent to the truth or falsity of the accusations of sexual misconduct against him." *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1097 (2d Cir. 2024).  To plead such a claim, a plaintiff must allege facts that (1) "raise grave doubts as to the merits of the decision itself," and (2) show the university "knowingly shut

---

[3] Counts XVI and XXXII.

its eyes to the risk that it was imposing sanctions based on a [false] accusation." (¶ 117 (quoting *Schiebel*, 120 F.4th at 1097).

Because VT concedes that Plaintiff adequately pleads facts supporting the second element of his erroneous outcome claims (there was "an adverse and erroneous outcome"), VT necessarily concedes that Plaintiff adequately pleads facts supporting the first element of his deliberate indifference claims (there are "grave doubts as to the merits of the decision itself").

Plaintiff pleads several facts supporting the second element of his deliberate indifference claims—that VT shut its eyes to the risk that the allegations against him were false. For example, VT closed its eyes to the following facts in the Poe matter.

- When the Blacksburg Police Department interviewed Pauline's roommate, who was in a bedroom a few feet away from Pauline's when the alleged sexual assault occurred, the roommate refuted much of Pauline's story. (¶¶ 27, 130-131).

- Despite the violent nature of Pauline's allegations, the Blacksburg Police Department never arrested Plaintiff, and the Commonwealth's Attorney never initiated charges against Plaintiff. (¶¶ 27, 128-129).

- After listening to Pauline testify for over an hour at a protective order hearing, including on cross-examination, a state court judge described Pauline's testimony as "extremely unique, if not bizarre" and denied the request for a protective order. (¶¶ 28, 125-127).

- Pauline made at least 17 false or inconsistent statements through the course of the police investigation, the protective order hearing, the VT investigation, and the VT hearing. (¶¶ 36, 164-181).

- Pauline withheld and spoliated relevant evidence. (¶¶ 36, 182-186).

- There were at least three reasons to explain why Pauline falsely accused Plaintiff of sexual assault: (1) Pauline was upset with Plaintiff because he did not want to have an exclusive relationship with her; (2) Pauline suffers from mental illness; and (3) Pauline is an incredibly immature person. (¶¶ 36, 187-201).

*    *    *

3

In the Jane Roe matter, VT closed its eyes to the following facts:.

- Plaintiff submitted unrefuted expert witness testimony from a faculty member at an Ivy League medical school that Jane was not "incapacitated." (¶¶ 46, 247-251 295-296).

- Cadet MS told VT's investigators that Jane did not appear intoxicated. (¶ 47, 236, 297, 300).

- Cadet MS testified (in response to questions from Plaintiff's lawyer) that Jane did not exhibit the potential signs of "incapacitation" discussed in a PowerPoint slide for a VT Title IX decision-maker training class that Defendant Hearing Officer Cureton attended a few months before the hearing. (¶¶ 47, 233, 289, 297-300). (Plaintiff reminded Cureton about the PowerPoint slide during his closing argument. (¶ 299)).

- Jane sent several text messages and took other actions in the weeks following the alleged sexual assault that were inconsistent with her allegation that Plaintiff sexually assaulted her. (¶¶ 242-246, 304).

*   *   *

VT argues that the Court should dismiss the deliberate indifference claims because Plaintiff "does not allege any facts creating an inference that he filed Title IX complaints against either [Jane or Pauline] for sexual harassment based on alleged false allegations of sexual assault." (Doc. 41 at 11).

But a plaintiff is not required to file a Title IX complaint with a school before he brings a Title IX deliberate indifference lawsuit against that school. A plaintiff need only show that the school had "actual notice of" the respondent claiming he being falsely accused of sexual assault. *Cf. Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 277 (1998) (holding that for a Title IX "deliberate indifference" claim, a plaintiff must show that an "official of the school" who "has authority to institute corrective measures on the [school's] behalf has actual notice of, and is deliberately indifferent to, the [harassing person's] misconduct").

4

Here, Defendants' exhibits show that Plaintiff, through his written statements during the VT investigations and his oral statements at the VT hearings, put VT on notice that Pauline and Jane falsely accused him of sexual assault. (*See, e.g.*, VT Investigation Report for Poe, Doc. 41-1 at 26 ("All of [Poe's] allegations are false. Period."); *id.* at 21 ("I deny [Poe's] allegations that I physically or sexually assaulted her."); VT Investigation Report for Roe, Doc. 41-2 at 25 ("I deny Jane's allegations that I sexually assaulted her."); *id.* at 39 (stating that Jane falsely accused him of sexual assault in order to save her ROTC scholarship by obtaining immunity for her underage drinking on the night in question).

## IV.    Plaintiff adequately pleads his Fourteenth Amendment due process claims.

### a.    Defendants concede that Plaintiff adequately pleads a liberty interest in his good name and reputation.

In their motions to dismiss, Defendants acknowledge that "the Fourth Circuit [in *Doe v. UNC*, 133 F.4th 305 (4th Cir. 2025)] has recognized a liberty interest in a college student's name and reputation when coupled with university discipline such as suspension or expulsion" for alleged sexual misconduct. (*See, e.g.*, Doc. 41 at 14, n.3).  Defendants therefore concede that Plaintiff adequately pleads a liberty interest in his good name and reputation.  (Plaintiff pleads a liberty interest in his good name and reputation in every one of his claims against Defendant Investigators, Hearing Officers, and Appellate Officers. *See, e.g.*, ¶ 467)).

### b.    Plaintiff adequately pleads a property interest in his continued enrollment at Virginia Tech.

#### 1.    *Va. Code. § 23.1-412 creates a property interest.*

Defendants correctly note in their motions that a "property interest" can be created by "state statutes or rules entitling the citizen to certain benefits." (*See, e.g.*, Doc. 41 at 12 (quoting *Doe v. Alger*, 228 F. Supp. 3d 713, 725 (W.D. Va. 2016)). For example, in *Barnes v. Zacahry*, 669 F.3d 1295, 1304-05 (11th Cir. 2012) the Eleventh Circuit held that a state university student had "a property interest in his enrollment" because the university, in accordance with a state statute, had adopted a code of conduct and that code of conduct prohibited suspension or expulsion for non-academic reasons absent a finding of a code violation.

This case is no different than *Zachary*.  As Plaintiff explains in his Complaint (¶ 90), in March 2020, the Virginia General Assembly enacted Va. Code. § 23.1-412, which requires public colleges and universities to "adopt non-academic student codes of conduct."  The statute says that students "*shall* have the responsibilities *and rights* afforded to them by the [school's] codes of conduct and related policies and procedures," *id.* at § 23.1-412(B) (emphasis added). Plaintiff further explains (¶ 91) that VT complied with § 23.1-412 by adopting a stand-alone Student Code of Conduct, that the August 2023 Student Code of Conduct was in effect during all times relevant to this action, and that the August 2023 Student Code of Conduct and related policies and procedures provide that a student can be suspended or expelled for non-academic reasons only if the student is found responsible for a violation of the Code of Conduct after an "impartial," "thorough," and "prompt" investigation, hearing, and appeal.

In short, Virginia Code § 23.1-412 creates a property interest in a student's continued enrollment at VT.  Defendants simply ignore this point in their motions to dismiss.

### 2.    *VT's policies and practices create a property interest.*

Irrespective of Va. Code. § 23.1-412, at least two judges in this District have held that a plaintiff adequately alleged a property interest in his continued enrollment at VT. *See Doe v. Virginia Tech*, 2024 WL 1417977, *12 (W.D. Va. Apr. 2, 2024) (Urbanski, J.) (finding that "Doe has now sufficiently pled that he had a property interest in his continued enrollment at Virginia Tech"); *Ortegel v. Virginia Tech*, 2023 WL 8014237, *13 (Nov. 20, 2023) (Dillon, J.) ("Ortegel alleges a plausible property interest.").[4]

Indeed, at the ***summary judgment*** stage of one of those cases, Judge Urbanski found "the evidence shows that [plaintiff] had a legitimate entitlement to his continued enrollment at Virginia Tech, which gave him a right to receive due process as guaranteed by the Fourteenth Amendment." *Doe v. Virginia Tech*, 2024 WL 4310873, *14 (W.D. Va. Sept. 26, 2024). The evidence cited by Judge Urbanski included deposition testimony by VT's then Assistant Director of Student Conduct,

---

[4] Neither the parties nor the Court addressed Va. Code. § 23.1-412 in these cases.  On information and belief, Plaintiff is the first litigant to assert Va. Code. § 23.1-412 as the basis for a property interest.

Tamara Cherry-Clark. *Id.* at 6. The Assistant Director position is currently held by one of the Defendants here, Sarah McCoy. (*See* ¶ 76).[5]

In *Ortegel*, Judge Dillon relied on her decision in *Doe v. Alger*, 175 F. Supp. 3d 646 (W.D. Va. 2016), to find that the plaintiff had adequately pleaded a property interest in his continued enrollment at VT. In *Alger*, Judge Dillon held that the plaintiff had adequately pleaded "that his continued enrollment" at James Madison University was a "protected property interest" by alleging that "through its policies and practices, JMU has a system of expelling, suspending, or dismissing students only after a finding of cause." *Id.* at 658.

Here, Plaintiff's allegations regarding a property interest track those relied on by Judge Dillon in *Alger* and *Ortegel*. (*See* ¶ 92) (alleging that even "before VT adopted a stand-alone Student Code of Conduct" in 2020, "VT's student handbook … included a Student Code of Conduct that provided for suspension or expulsion for non-academic reasons only after a student had been found 'responsible' for violating the Code of Conduct after an impartial, thorough, and prompt investigation, hearing, and appeal"). Therefore, Plaintiff adequately pleads a property interest in his continued enrollment at VT.

In their motions to dismiss, Defendants simply ignore the fact that Judges Urbanski and Dillon have held that plaintiffs had adequately pleaded a property interest in continued enrollment at VT (and that Judge Urbanski has found there is

---

[5] Ms. Cherry-Clark served as Pauline's advisor at the VT hearing. (Doc. 29-2 at ECF page 4).

8

sufficient evidence of a property interest to withstand summary judgment). Defendants also simply ignore paragraph 92 of Plaintiff's Complaint, where Plaintiff pleads facts that track those relied on by Judge Dillon in *Alger* and *Ortegel*.

Defendants cite several cases that say a student code of conduct cannot be enforced under a breach of contract theory. (*See, e.g.*, Doc. 41 at 13-14). Those cases are inapposite because Plaintiff does not assert breach of contract claims.

> c. **Plaintiff adequately pleads that the Defendant Investigators, Hearing Officers, and Appellate Officers violated his right to substantive due process.**

"Due process contains both substantive and procedural components." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014). Substantive due process "'bars certain governmental actions regardless of the fairness of the procedures used to implement them.'" *Baker v. McCall*, 842 F. Supp. 2d 938, 943 (W.D. Va. 2012) (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 840 (1998)); *see also Cnty. of Sacramento*, 523 U.S. at 856 (Kennedy, J., concurring) ("The prohibition against deprivation of life, liberty, or property contained in the Due Process Clause of the Fourteenth Amendment extends beyond the command of fair procedures. It can no longer be controverted that due process has a substantive component as well.").

A university disciplinary decision violates a student's right to substantive due process if it is "arbitrary" and "capricious," or it is issued in "bad faith." *Doe v. Dordt Univ.*, 616 F. Supp. 3d 872, 907 (N.D. Iowa 2022); *see also Doe v. The Citadel*, 2022 WL 2806473, *5 (D.S.C. Jul. 18, 2022) (stating that a "serious [university]

disciplinary action should be based upon ample evidence such that the decision is not arbitrary or capricious").[6]

VT acknowledges that an arbitrary and capricious disciplinary decision violates a student's right to substantive due process. (*See* VT Student Code of Conduct, Doc. 4 at ECF page 5 ("Students at Virginia Tech enjoy those rights guaranteed by the Constitutions of the United States and the Commonwealth of Virginia as applicable."); *id.* at ECF page 21 (stating that a VT Appellate Officer will "vacate a finding," that is "arbitrary").[7]

And, where a government actor has "time to reflect on [his] actions," he violates a person's right to substantive due process if his actions exhibit a "deliberate indifference" to the potential harm to that person. *Washington v. Housing Authority of the City of Columbia*, 58 F.4th 170, 178 (4th Cir. 2023). Because such deliberate indifference "shocks the conscious," it is "arbitrary in the constitutional sense." *Cnty. of Sacramento*, 523 U.S. at 846; *accord Washington*, 58 F.4th at 178.

In his Complaint, Plaintiff alleges facts from which a jury could reasonably conclude that Defendant Investigators, Hearing Officers, and Appellate Officers engaged in "bad faith," "conscious shocking" conduct that exhibited a "deliberate

---

[6] *Accord Khalaf v. Saint Louis Univ.*, 2025 U.S. Dist. LEXIS 147160, *13 (E.D. Mo. Jul. 31, 2025); *Danam v. Grand Canyon Univ.*, 2024 WL 4850490, *13 (Ariz. App. Nov. 21, 2024); *Guidry v. Our Lady of the Lake Nurse Anesthesia Program*, 170 So.3d 209, 215 (La. App. 2015); *Abbarrio v. Hamline Univ. School of Law*, 258 N.W.2d 108, 111 (Minn. 1977).

[7] The term "arbitrary" is generally understood as encompassing the terms "arbitrary and capricious" and "bad faith." *See, e.g.* Black's Law Dictionary 104 (defining the term "arbitrary" as including an act "done capriciously" and stating that "'arbitrary' is synonymous with bad faith").

indifference" to the possibility that Plaintiff would be found responsible for sexual misconduct even though he did not engage in such misconduct. For example:

- Investigator Twigger advised Pauline Poe to withhold relevant evidence from the Poe investigation. (¶¶ 137-139).

- Investigators Polidoro, Barnett, and Twigger wrote an investigation report for the Poe investigation that ignored Pauline's numerous false and inconsistent statements and that misrepresented evidence. (¶ 148).

- Hearing Officers DiFillippo and Stayer found Plaintiff responsible for sexual misconduct in the Poe matter via an arbitrary and capricious decision issued in bad faith. (¶¶ 160-203). To wit:

  o In order to find Pauline "more credible" than Plaintiff, DiFillippo and Stayer intentionally mischaracterized Plaintiff's testimony. (¶¶ 161-163).

  o DiFillippo and Stayer ignored the fact that Pauline made at least 17 false or inconsistent statements through the course of the police investigation, the protective order hearing, and the VT hearing. (¶¶ 164-181).

  o DiFillippo and Stayer ignored the fact that Pauline withheld and spoliated relevant evidence. (¶¶ 182-186).

  o DiFillippo and Stayer applied a lower credibility standard to Pauline than they applied to Plaintiff because Pauline is female and Plaintiff is male. (¶¶ 202-203).

- Appellate Officer Haines denied Plaintiff's appeal in the Pauline Poe matter after reading nothing more than the appeal's section headers. (¶¶ 204-207, 212-214).

- Appellate Officer Haines, without explanation, ignored Plaintiff's appellate arguments (which tracked the points made above) that the DiFillippo/Stayer written decision was arbitrary. (¶¶ 204-209).

- Investigators Polidoro, Barnett, and Twigger wrote an investigation report in the Jane Roe matter that deliberately omitted the elements of the alleged offense. (¶¶ 253-256).

- Hearing Officers Cureton and McCoy found Plaintiff responsible for sexual misconduct in the Jane Roe matter via an arbitrary and capricious decisions issued in bad faith. (¶¶ 285-328). To wit:

  o Cureton and McCoy knowingly made an *ex post facto* change to the elements of the alleged offense. (¶¶ 285-290).

11

- o In order to find Jane "more credible" that Plaintiff, Cureton and McCoy intentionally mischaracterized Plaintiff's testimony. (¶¶ 306-309).

- o Cureton and McCoy applied a lower credibility standard to Jane than they applied to Plaintiff because Jane is female and Plaintiff is male. (¶¶ 306-314).

- o Cureton and McCoy applied a lower credibility standard to Cadet DM (who testified for Jane) than they applied to Cadet MS (who testified for Plaintiff) because Cadet DM is a black female and Cadet MS is a white male. (¶¶ 315-326).

- o Cureton and McCoy fabricated evidence about Jane's size in order to find that Jane drank enough alcohol to render her intoxicated. (¶¶ 327-328).

- o Cureton and McCoy, without explanation, ignored extensive evidence that Jane was not "incapacitated," including:

  - ▪ Unrefuted expert witness testimony from a faculty member at an Ivy League medical school that Jane was not "incapacitated." (¶¶ 46, 247-251 295-296).

  - ▪ Cadet MS's statements to VT's investigators that Jane did not appear intoxicated. (¶ 47, 236, 297, 300).

  - ▪ Cadet MS's hearing testimony (given in response to questions from Plaintiff's lawyer) that Jane did not exhibit the potential signs of "incapacitation" discussed in a PowerPoint slide for a VT Title IX decision-maker training class that Cureton attended a few months before the hearing. (¶¶ 47, 233, 289, 297-300). (Plaintiff reminded Cureton about the PowerPoint slide during his closing argument. (¶ 299)).

  - ▪ Jane sent several text messages and took other actions in the weeks following the alleged sexual assault that were inconsistent with her allegation that Plaintiff sexually assaulted her. (¶¶ 242-246, 304).

- • Appellate Officer Keene, without explanation, ignored Plaintiff's appellate arguments (which tracked the points made above) that the Cureton/Stayer written decisions were arbitrary. (¶¶ 329-334).

\*    \*    \*

Defendants argue that Plaintiff's substantive due process claims fail as a matter of law because substantive due process protects only "fundamental" liberty

and property interests and Plaintiff's asserted liberty and property interests are not "fundamental" ones. (*See, e.g.*, Doc. 41 at 15). Defendants' argument makes no sense.

As discussed above, because of the Fourth Circuit's ruling in *UNC*, Defendants concede that a state university deprives a student of a Fourteenth Amendment liberty interest when it suspends or expels the student for alleged sexual misconduct and notes the suspension or expulsion on the student's transcript. (*See, e.g.*, *id.* at Doc. 41 at 14 n.3). To be sure, the Fourth Circuit's liberty interest holding was made in the context of a procedural due process claim. But the Fourteenth Amendment does not separate liberty interests into two categories—one protected only by procedural due process and the other protected only by substantive due process. Because Plaintiff has a liberty interest in his good name and reputation, the Fourteenth Amendment prohibited VT officials from depriving him of that interest without procedural due process *and* substantive due process.

And as discussed above, Plaintiff adequately pleads a property interest in his continued enrollment at VT. The Fourteenth Amendment does not separate property interests into two categories—one protected only by procedural due process and the other protected only by substantive due process. Because Plaintiff has a property interest in his continued enrollment at VT, the Fourteenth Amendment prohibited VT officials from depriving him of that interest without procedural due process *and* substantive due process.[8]

_____

[8] None of the cases Defendants cite on this issue says that there are two categories of liberty interests or property interests for purposes of Fourteenth Amendment due process.

### d.    Plaintiff adequately pleads his procedural due process claims.

Plaintiff alleges that Defendant Hearing Officers DiFillippo and Stayer violated his procedural due process rights by applying the preponderance of the evidence standard rather than the clear and convincing evidence standard and by not allowing Plaintiff's attorney to cross-examine Pauline Poe. (¶¶ 94-96, 151-152, 158-159). Plaintiff alleges that Defendant Hearing Officers Cureton and McCoy violated his procedural due process rights by allowing Jane Roe to opt out of cross-examination before Plaintiff's lawyer had completed the cross-examination, by making an *ex post facto* change to the elements of the alleged offense, and by applying the preponderance of the evidence standard rather than the clear and convincing evidence standard. (¶¶ 94-97, 282-284, 287).

Plaintiff thoroughly briefed these issues in his motion for a preliminary injunction. (*See* Doc. 3-1 at 3-7, 8-9, 12-16, 19-20, 22-25; Doc. 32 at 12-24). Rather than inundate the Court with repetitive briefing on these issues, Plaintiff incorporates his preliminary injunction briefing on these issues as if fully set forth herein.

\*     \*     \*

Plaintiff alleges that Defendant Martha Glass violated Plaintiff's right to procedural due process during the first week of November 2023 when she placed him on interim suspension and denied his appeal of the interim suspension without notifying Plaintiff of both of the bases for the interim suspension. (¶¶ 122-124). Plaintiff alleges that Glass partially based the interim suspension on Jane's Title IX

14

complaint, which Jane filed on November 1, 2023, even though Glass made no mention of Jane's Title IX complaint and VT did not notify Plaintiff of the Title IX claim until November 29, 2023. (¶ 124 n.74).

Glass argues that Virginia's two-year statute of limitations bars Plaintiff's claim against her because Plaintiff filed his Complaint on November 24, 2025. But Plaintiff alleges that it was not until May 16, 2025, when VT filed a deposition transcript from another matter on this Court's docket, that Plaintiff learned that Defendant Polidoro (VT's Title IX coordinator in November 2023) typically consulted with Glass on interim suspensions and therefore would have notified Glass of Jane's Title IX complaint when Polidoro and Glass discussed Plaintiff's possible interim suspension. (¶ 124). Therefore, under Virginia's doctrine of equitable estoppel, the statute of limitations did not begin to run more than two years before Plaintiff filed his Complaint because Glass' concealment of her misconduct prevented Plaintiff from discovering Glass' wrongdoing before May 16, 2025. *See, e.g.*, *FDIC v. Cocke*, 7 F.3d 396, 402 (4th Cir. 1993) (stating "we hold that [the Virginia] statute of limitations is tolled until a person intentionally misled by a putative defendant could reasonably discover the wrongdoing and bring action to redress it").

## V.    Defendants are not entitled to qualified immunity on Plaintiff's due process claims.

Although the Eleventh Amendment prohibits federal monetary damages awards against state officials in their *official* capacities, it does not prohibit federal monetary damages awards against state officials in their *individual* capacities. *See*

15

*Hafer v. Melo*, 502 U.S. 21, 31 (1991). The doctrine of "qualified immunity" shields a state official from a federal monetary damages award, but ***only*** when the official's "actions were objectively legally reasonable." *See* Cook & Sobieski, 1 Civil Rights Actions ¶ 2A.06[A][1] (Dec. 2024).

In other words, a state official is personally liable for a federal monetary damages award for conduct that "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This includes a university official who violates clearly established statutory or constitutional rights during a student disciplinary proceeding. *See Doe v. Miami Univ.*, 882 F.3d 579, 604-05 (6th Cir. 2018) (holding that under the facts alleged, a university hearing officer was not entitled to qualified immunity from damages for a student's section 1983 claim).

The Fourth Circuit has made clear that "there does not need to be a case directly on point for a right to be clearly established." *Gilliam v. Sealey*, 932 F.3d 216, 235 (4th Cir. 2019); *accord Cooper v. Doyle*, 163 F.4th 64, 79 (4th Cir. 2025). Indeed, "clearly established law encompasses not only specifically adjudicated rights, but also those manifestly included within more general applications of the core constitutional principles invoked." *Id.* at 79-80 (4th Cir. 2025) (cleaned up). "In the end, the lodestar for whether a right was clearly established is whether the law gave officials fair warning that their conduct was [unlawful or] unconstitutional." *Gilliam*, 932 F.3d at 235 (quoting *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008)).

16

Qualified immunity is "an affirmative defense under 42 U.S.C. § 1983." *Gelin v. Balt. Cnty.*, 132 F.4th 700, 709 (4th Cir. 2025). "At the motion to dismiss stage, Defendants carry the burden of demonstrating qualified immunity, and their entitlement to it must appear on the face of the complaint to warrant dismissal on such grounds." *Hammock v. Watts*, 146 F.4th 349, 364 (4th Cir. 2025) (cleaned up).

      **a.** **Defendants violated Plaintiff's clearly established statutory (Title IX) right to be free of sex discrimination in a federally funded educational program.**

Under Fourth Circuit case law on the books when VT began its investigations of Pauline's and Jane's allegations, Plaintiff had a clearly established statutory right under Title IX to be free from sex discrimination in a VT disciplinary action. *See* 20 U.S.C. § 1681(a) (prohibiting exclusion from a federally funded educational program "on the basis of sex"); *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 234-236 (4th Cir. 2021) (stating that a student can pursue a Title IX claim under the "erroneous outcome" theory).

By conceding that Plaintiff adequately pleads his Title IX erroneous outcome claims, VT concedes that Plaintiff adequately pleads that VT suspended him in the Pauline Poe matter and expelled him in the Jane Roe matter "on the basis of sex." And, Plaintiff pleads that the Defendant Investigators, Hearing Officers, and Appellate Officers committed the acts of sex discrimination that violated Title IX. (*See* ¶ 12 ("When investigating and adjudicating the allegations against Johnny, the VT employee defendants … violated Johnny's Title IX rights against sex-based discrimination in a federally funded educational program"); *see also* ¶¶ 115, 303, 305).

17

In short, the Defendant Investigators, Hearing Officers, and Appellate Officers were on notice that Title IX prohibited them from discriminating against Plaintiff on the basis of sex in the disciplinary actions against him. For that reason alone, they are not entitled to qualified immunity on Plaintiff's due process claims. *See C.G. v. City of New York*, 635 F. Supp. 2d 152, 182 (E.D.N.Y. 2009) (holding that because the Title IX prohibition on sex discrimination in school disciplinary actions was "clearly established," a school official would not be entitled to qualified immunity if he made his disciplinary decision "on the basis of [plaintiff's] gender"); *judgment modified on other grounds*, *T.Z. v. City of New York*, 634 F. Supp. 2d 263 (E.D.N.Y. 2009).

### b. Defendants violated Plaintiff's clearly established constitutional due process rights.

Existing case law establishes the core constitutional principle that the Fourteenth Amendment's due process clause prohibits the government from finding that a person committed an offense unless the evidence establishes every element of that offense. *See, e.g.*, *Jackson v. Virginia*, 443 U.S. 307, 313-316 (1979); *Hubbard v. Virginia*, 661 S.E.2d 464, 466 (2008). So, Defendants Cureton and McCoy are not entitled to qualified immunity on Plaintiff's claims that they violated Plaintiff's due process rights by making an *ex post facto* change to the elements of the alleged offense in the Jane Roe matter. And because Defendant Keene denied Plaintiff's appeal even though the appeal highlighted the *ex post facto* change of the elements (¶¶ 329-334), Keene is not entitled to qualified immunity.

18

Existing case law also establishes the core constitutional principle that the Fourteenth Amendment's due process clause prohibits government actors from engaging in "calculated bad faith" against a person. *See, e.g.*, *Rodgers v. Tolson*, 582 F.2d 315, 319 (4th Cir. 1978) (holding that defendants were not entitled to qualified immunity at motion to dismiss stage because plaintiff alleged they engaged in "calculated bad faith"). Such "bad faith" includes "bad faith suppression" of evidence, making material "omissions" or "false statements" regarding evidence, and "fabrication of evidence," *Gilliam*, 932 F.3d at 240-41 (holding that defendants were not entitled to qualified immunity at summary judgment stage where they engaged in such conduct).

Here, Plaintiff alleges that Defendant Investigators and Hearing Officers engaged in bad faith suppression of evidence, made material omissions and false statements regarding the evidence, and/or fabricated evidence. (*See, e.g.*, ¶¶ 137-139 (alleging that Defendant Twigger—a former police detective—advised Pauline to withhold relevant evidence from the investigation); ¶ 148 (alleging that Defendant Investigators Polidoro, Barnett and Twigger ignored evidence and misrepresented evidence in the Pauline Poe matter); ¶¶ 253-256 (alleging that Polidoro, Barnett and Twigger deliberately omitted the elements of the alleged offense from their report); ¶¶ 160-163 (alleging that Difillippo and Stayer's mischaracterization of Plaintiff's testimony was "so objectively false that it demonstrates that the Hearing Officers issued their decision in bad faith"); ¶¶ 306-310 (alleging that Cureton and McCoy's mischaracterization of Plaintiff's testimony was "so objectively false that it can only

19

be explained by bad faith"); (¶¶ 327-328) (alleging "Cureton and McCoy fabricated evidence about Jane's size ... in order to find that Jane drank enough alcohol to render her 'intoxicated.'").

Finally, it goes without saying that a decision-maker violates a person's right to due process if she relies on information provided *ex parte* when she makes her decision. Therefore, because Plaintiff alleges that Defendants Glass, Haines, and Keene relied on *ex parte* information when they made their decisions, they are not entitled to qualified immunity.

## VI.   Plaintiff adequately pleads his equal protection claims.

Plaintiff alleges that Defendant Hearing Officers DiFillippo and Stayer violated his right to equal protection by refusing to allow his attorney to cross-examine Pauline Poe because the alleged incident occurred off-campus and by not affording him the presumption of innocence because the alleged incident occurred off-campus (VT students accused of on-campus sexual misconduct are allowed to have their attorneys cross-examine witnesses and are afforded the presumption of innocence). (¶¶ 102, 153-157).

Plaintiff thoroughly briefed these issues in his motion for a preliminary injunction.  (*See* Doc. 3-1 at 7, 9-10, 20-22; Doc. 32 at 5-12). Plaintiff incorporates his preliminary injunction briefing on these issues as if fully set forth herein.

In their motions to dismiss, Defendants argue that Plaintiff does not allege that VT's two-track disciplinary system is based on "discriminatory animus." (Doc. 51 at 9). That's false. Plaintiff alleges the two-track system is based on discriminatory

20

animus.  (*See* ¶ 156 ("VT created the two-track system because nearly 100% of the accused students in VT sexual misconduct cases are male and nearly 100% of the accusers in those cases are female and VT wants to make it as difficult as possible for male students to defend themselves in those cases.")).

Defendants also argue that VT's two-track system is "based on *mandatory* federal requirements." (Doc. 51 at 10) (emphasis added). That's likewise false. Although the Department of Education's Title IX regulations require VT to afford an accused student in on-campus cases a presumption of innocence and the right to have his attorney cross-examine the accuser, federal law does not prohibit VT from affording those rights to accused students in off-campus cases.

Defendants argue that VT's two-track system is "rational" because on-campus sexual misconduct "impacts a student's access to an educational program, whereas" off-campus sexual misconduct "does not." (Doc. 51 at 11). That argument does not make sense. If Defendants believe that an accused student should be afforded fewer procedural protections in cases where his alleged misconduct has a greater adverse effect on the accuser's access to an educational program, Defendants would provide students accused of *on-campus* sexual misconduct with fewer procedural protections than those accused of off-campus sexual misconduct.

Defendants also argue that the presumption of innocence issue is a "red herring" because "Plaintiff does not allege that any other presumption regarding responsibility applies" in off-campus cases. (Doc. 51 at 10). That argument also makes no sense. Plaintiff's claim is not that VT applied some "other presumption" in the Poe

matter. His claim is that VT should have, but did not, apply the presumption of innocence in the Poe matter.

With respect to cross-examination, Defendants argue that there is no "difference" between a cross-examination conducted directly by a party's lawyer and a party reading cross-examination questions that his lawyer wrote for him. (Doc. 51 at 11). That begs the question: if there is no "difference" between the two types of cross-examination, why doesn't VT allow a student's attorney to conduct cross-examination in off-campus cases? In any event, the issue of whether there is a difference between the two types of cross-examination is a factual one, and Plaintiff pleads that attorney cross-examination is the more effective type. (¶ 159 n.116).

## VII.  Eleventh Amendment immunity does not bar Plaintiff's claims for injunctive relief.

Plaintiff's requested relief includes a permanent injunction, issued pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), "ordering the President of Virginia Tech and the Virginia Tech Vice President for Student Affairs to permanently expunge any reference to the  [Poe and Roe] matters from Plaintiff's Virginia Tech records, including his transcript."  (Doc. 1 at ECF page 203).

The President of VT (Defendant Sands) and VT's Vice President for Student Affairs (Defendant Keene) have the delegated authority to expunge Plaintiff's disciplinary record. As set forth in Plaintiff's Complaint (¶ 69), although the Board of Visitors' statutory responsibilities include "regulat[ing] the government and discipline of students," Va. Code § 23.1-2603(B), the Board appoints the President of

the University and delegates much of its authority to the President, "who serves as an agent of the Board and chief executive officer of the University." *See* Bylaws of the Board of Visitors, art. 1, § 5. And as set forth in Plaintiff's Complaint (¶ 71), the Vice President for Student Affairs at VT "has responsibility for the University conduct system, with direct supervisory oversight of disciplinary matters assumed by the Office of Student Conduct, under the Director of Student Conduct." (*See* VT Student Code of Conduct, Doc. 4 at ECF page 4).

Defendants VT, Sands and Keene concede that if Plaintiff succeeds on his 42 U.S.C. § 1983 claims, he will be entitled to the injunctive relief he seeks. (*See* Doc. 41 at 20 ("Ultimately, it is Virginia Tech that will provide Plaintiff with the equitable relief Plaintiff seeks.")). Because Plaintiff has adequately pleaded his 42 U.S.C. § 1983 claims, Eleventh Amendment sovereign immunity does not prohibit Plaintiff from seeking his requested injunctive relief. *See UNC*, 133 F.4th at 319 ("In light of the forgoing, we find the district court did not err in permitting Doe's claims for injunctive relief against the university employees to survive the defendants' motion to dismiss.").

Therefore, the Court should deny the motions by the Defendant Investigators, Hearing Officers, and Appellate Officers to dismiss the official capacity section 1983 claims against them.[9] To the extent Defendants contend that Plaintiff should amend

---

[9] (Doc. 41 at 18-20; Doc. 45 at 15-17; Doc. 47 at 15-17; Doc. 49 at 18-20; Doc. 51 at 20-22).

his Complaint to include Sands and Keene as defendants in all the section 1983 claims, Plaintiff will file a motion to amend his Complaint accordingly.

## VIII.  Plaintiff adequately pleads his "gross negligence" and "willful and wanton negligence" claims.[10]

Plaintiff pleads Virginia common law "gross negligence" and "willful and wanton negligence" claims against the VT Investigators, Hearing Officers, and Appellate Officers. All of the allegations of bad faith Plaintiff cites in arguing that Defendants are not entitled to qualified immunity also support Plaintiff's claims for "gross negligence" and "willful and wanton negligence."

Defendants argue that Plaintiff fails to state gross negligence or willful and wanton negligence claims "because Virginia law does not impose a duty of care on universities or university employees to develop, implement, oversee, or follow policies or to generally look out for the well-being of students."[11] But Plaintiff's claims are not based on the duty as framed by Defendants.

Indeed, Defendants' argument demonstrates a fundamental misunderstanding of how Virginia law determines whether one person owes a duty to another person. In any event, Plaintiff pleads facts showing that, under well-settled principles of

---

[10] (Counts IV, V, IX, X, XIII, XIV, XIX, XX, XXI, XXII, XXV, XXVI, XXIX, XXX).

[11] *See* Doc. 41 at 20 (Defendant Keene); Doc. 45 at 17 (Defendant Haines); Doc. 47 at 18 (Defendants Polidoro, Barnett, and Twigger); Doc. 49 at 20 (Defendants McCoy and Cureton); Doc. 51 at 22 (Defendants DiFillippo and Stayer); Doc. 53 at 9-10 (Defendants Settle and Hartman).

Virginia law, the Defendant Investigators, Hearing Officers, and Appellate Officers violated a duty to Plaintiff.

Under Virginia law, negligence "involves the conception of a duty to act in a certain way toward others, and a violation of that duty by acting otherwise." *RGR, LLC v. Settle*, 764 S.E.2d 8, 16 (Va. 2014). That "duty is not abstract: a specific course of conduct gives rise to a specific duty extending to specific persons." *Quisenberry v. Huntington Ingalls Inc.*, 818 S.E.2d 805, 810 (Va. 2018). In other words, the "scope of the duty will vary with the circumstances of each case, but it is always a duty owed to a discernible individual, or to a class of which that individual is a member." *Dudley v. Offender Aid and Restoration of Richmond, Inc.*, 401 S.E.2d 878, 883 (Va. 1991).

In "defining those to whom a duty is owed," the Supreme Court of Virginia has "said [a] general duty is owed 'to those within reach of a defendant's conduct.'" *Quisenberry*, 818 S.E.2d at 810 (quoting *RGR*, 764 S.E.2d at 17). That "is because 'the risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or others within the range of apprehension.'" *Quisenberry*, 818 S.E.2d at 810 (quoting *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 100 (N.Y. 1928)).

The "existence of this duty does not depend on proving a particular relationship." *Id.* at 810. Instead, the duty "arises from that basic and necessary regulation of civilization which forbids any person because of his own convenience to recklessly, heedlessly, or carelessly injure another." *Ibid* (quoting *Louisville & Nashville R.R. Co. v. O'Neill*, 89 S.E. 862, 866 (Va. 1916)); *see also* Friend, Personal

Injury Law in Virginia § 1.1.1 at 2 ("[T]he only 'relationship' which must exist is a sufficient juxtaposition of the parties in time and space to place the plaintiff in danger from the defendant's acts.").

Here, Defendant Investigators, Hearing Officers, and Appellate Officers were all in a position with respect to Plaintiff where they could reasonably foresee that a lack of due care in the performance of their duties could injure Plaintiff by resulting in an erroneous finding that he committed sexual assault and, in a suspension, or expulsion from VT. Therefore, Defendants owed a duty of care to Plaintiff.

Defendants Settle and Hartman—who brazenly violated the Title IX regulations by refusing to allow Plaintiff to submit a written response to the Investigation Report in the Jane Roe matter and refusing to allow Plaintiff's lawyer to cross-examine Defendant Investigator Twigger at the Jane Roe Title IX hearing (¶¶ 269-273)—were also in a position with respect to Plaintiff where they could reasonably foresee that a lack of due care in the performance of their duties could injure Plaintiff.

Defendant Hartman argues that she is absolutely immune from suit because she was acting in her role as an attorney for VT. (Doc. 53 at 10-11). But she cites no authority for that proposition. Moreover, even prosecutors do not have absolute immunity for the advice they give to the police. *See Burns v. Reed*, 500 U.S. 478, 496 (1991) ("we conclude that respondent has not met his burden of showing the relevant factors to justify an extension of absolute immunity to the prosecutorial function of

giving legal advice to the police"). So it's unclear why Hartman believes she has absolute immunity here.

## CONCLUSION

For the reasons discussed above and in Plaintiff's briefing on his motion for a preliminary injunction, the Court should deny Defendants' motions to dismiss.

Dated: March 2, 2026                     Respectfully submitted,

                                          */s/* James Fraser
                                          James Fraser (admitted pro hac vice)
                                          P.O. Box 3092
                                          Annapolis, MD 21403
                                          Tel. 443-254-5115
                                          jcfraser70@outlook.com


                                          Parker Bowman, VSB No. 100389
                                          Lindsay R. McKasson, VSB No. 96074
                                          BINNALL LAW GROUP, PLLC
                                          717 King Street, Suite 200
                                          Alexandria, Virginia 22314
                                          Tel: (703) 888-1943
                                          Fax: (703) 888-1930
                                          parker@binnall.com
                                          lindsay@binnall.com

                                          *Counsel for Plaintiff John Doe*

## CERTIFICATE OF SERVICE

I certify that on March 2, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ James Fraser
James Fraser (admitted pro hac vice)

*Counsel for Plaintiff John Doe*

28