# EXHIBIT 12

John Doe

June 17, 2024

Mr. Rohsaan Settle
Interim Director of Student Conduct
Ms. Kristina Hartman
Associate University Legal Counsel
Virginia Polytechnic and State University
Blacksburg, VA 24016

      Re: Case No. 2024348902

Dear Mr. Settle and Ms. Hartman:

      Thank you for meeting with my Advisor and me on Friday, June 14 for a pre-hearing meeting in the above-referenced case. This letter addresses three topics: (1) my written response to the Title IX investigation report, (2) your May 30 response to my May 27 email on the applicable decisional standards in cases where a complainant alleges "incapacitation," and (3) the parties' right to have their advisor cross-examine the Title IX investigator.

      Please send your response to this letter to my Advisor and me by COB today so that my Advisor can evaluate whether to seek a temporary restraining order and preliminary injunction with respect to the issues discussed in this letter.

## 1. Written response to the investigation report.

      Along with this letter, I am providing you with my written response to the Title IX investigation report. As explained in the first page of the written response and in the footnote below, the federal regulation that governs this case, 34 C.F.R. § 106.45 (May 2020), states that the parties in Title IX investigations have the right to submit "a written response" to the final investigation report.[1] Please send my written response to the investigation report to the hearing officers assigned to this case.

---

[1] 34 C.F.R. § 106.45(b)(5)(vii) states that the educational institutions must, "at least 10 days prior to a hearing …, send each party and the party's advisor, if any, the investigative report in an electronic format or hard copy, *for their review and written response*." (emphasis added). Moreover, the preamble to the current version of this regulation states that a "party who believes the investigator reached the wrong conclusion about the relevance of the evidence may argue again to the decision-maker (*i.e.*, as part of the party's response to the investigative report, and/or at a live hearing) about whether the evidence is actually relevant." *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30026, 30304 (May 19, 2020). Please note that "preambles" are

Please note that my written response to the investigation report does not include "new information." Although the response includes screen shots of certain PowerPoint slides from the Title IX decision-maker training materials posted on Virginia Tech's website, those slides do not constitute "new information" because the hearing officers should have already viewed the slides. Moreover, because the slides were posted on the website on or after April 30, 2024—*i.e.*, well after my 10-day response was due—it would have been impossible for me to submit the slides with my 10-day response.

Please confirm that you will send my response to the investigation report to the hearing officers.

## 2. Applicable decisional standards in cases where a complainant alleges "incapacitation."

In my May 27 email to you, I asked that the hearing officers be instructed that "even if they find that the complainant was incapacitated at the time of the alleged violation, the respondent cannot be found responsible for the alleged violation unless they also find that the respondent 'knew or should have known' that the complainant was incapacitated." In your May 30 response, you declined to say that you would give the hearing officers the requested instruction. Instead, you stated: "I encourage you to state in your opening statement and/or your closing statement anything you would like the hearing officers to know related to the 'knew or should have known' concept of incapacitation. That would be the most appropriate time(s) to communicate that information to them."

However, the Virginia Tech Title IX decision-maker training materials (PowerPoint slides dated April 30, 2024) posted on Virginia Tech's website mirror my requested instruction on "knew or should have known."[2] The relevant slides are reproduced below.

---

explained later in this letter, and that the aforementioned preamble is available at https://www.regulations.gov/document/ED-2018-OCR-0064-124169.

[2] The PowerPoint presentation's title page says "Title IX Higher Education Decision-Maker."

VT-000345

# Incapacity

**Was the Complainant incapacitated?**

- **Incapacitation:** a state where an individual cannot make rational, reasonable decisions because they **lack the capacity** to give knowing consent
  - Unable to understand who, what, when, where, why, or how
  - Incapacity ≠ impaired, drunk, intoxicated, or under the influence
  - Insufficient situational awareness
  - Lack of consequential awareness

 
---

# Incapacity

- What was the reason for incapacity?
  - Alcohol or other drugs (prescription or non-prescription)
  - Mental/cognitive impairment
  - Injury
  - Asleep or unconscious
- Blackouts are frequent issues
  - Blackout ≠ incapacitation (automatically)
    - Partial blackout must be assessed as well
  - Memory absent, but verbal and motor skills may still function

**VT-000346**

## Evidence of Incapacity: Potential Context Clues

- Slurred speech
- Scent of alcohol on the breath
- Shaky equilibrium; disorientation
- Passing out/unconsciousness
- Throwing up
- Known blackout
- Outrageous or unusual behavior (requires prior knowledge)

Incapacitation determination is made contextually **in light of all the available relevant evidence**



ATIXA © 2023 Association of Title IX Administrators

33

## Incapacity Analysis

- If the Complainant **was not** incapacitated, move to the Consent Analysis
- If the Complainant **was** incapacitated, but:
    - The Respondent did not know, **AND**
    - The Respondent would not have reasonably known of the Complainant's incapacity = no policy violation, move to Consent Analysis
- If the Complainant **was** incapacitated, and:
    - The Respondent **knew it or caused it** = policy violation
    - The Respondent **should have known it (reasonable person)** = policy violation
    - The Respondent's own intoxication cannot be used as a defense

ATIXA © 2023 Association of Title IX Administrators

34

4

VT-000347

## Prior Knowledge Construct

- Did the Respondent previously know the Complainant?
  - If so, was the Complainant acting differently than previous similar situations?
- Evaluate what, if anything, the Respondent observed the Complainant consuming
  - Use a timeline analysis
- Determine if the Respondent provided any substances to the Complainant

ATIXA    © 2023 Association of Title IX Administrators                                      35

So, as Virginia Tech's Title IX training materials note, the "knew or should have known" issue is part of the decisional standards that hearing officers must apply in cases where a complainant alleges "incapacitation." However, it should not be left up to the respondent to explain the decisional standards to the hearing officers. The Office of Student conduct should ensure that the hearing officers are instructed on the applicable decisional standards. Please confirm that you will instruct the hearing officers that the "knew or should have known" issue is part of the applicable decisional standards.

**3. The parties' right to have their advisor cross-examine the Title IX investigator.**

The currently applicable Title IX regulation states that post-secondary institutions "must permit each party's advisor to ask the other party and ***any witnesses*** all relevant questions and follow-up questions." 34 C.F.R. § 106.45(b)(6)(i) (emphasis added). But the "Title IX Informational Meeting" document that was attached to the June 6, 2024 notice of hearing that you sent to me states that questions to the hearing officers "must be asked by the parties—not advisors—through the hearing officers."[3]

During our June 14 pre-hearing meeting, my Advisor asked Ms. Hartman if this rule (*i.e.*, that advisors cannot question the investigator) is stated in any Virginia Tech written policies. Mr. Hartman responded that this rule is stated in Virginia Tech's written Title IX policy. My Advisor also asked Ms. Hartman if Virginia Tech ever allowed advisors to question Title IX investigators in Title IX hearings conducted during the Trump Administration. Ms. Hartman responded that

---

[3] *See* "Title IX Informational Meeting" at 4.

VT-000348

Virginia Tech has always interpreted the current version of the applicable regulation as not requiring that advisors be allowed to question an investigator because the regulation has separate definitions for the terms "witness" and "investigator."[4]

For the following reasons, I respectfully submit that Virginia Tech's position on this issue is wrong and that the currently applicable regulation requires post-secondary institutions to permit advisors to question investigators.

_**First**_, neither of Virginia Tech's Title IX policy documents (Policy No. 1026 (08/13/2020) or _Title IX Reporting and Grievance Procedures for Sexual Harassment and Violence_) state that only the parties, and not their advisors, are permitted to question investigators.

_**Second**_, Virginia Tech's own Title IX training materials (posted to the Virginia Tech website) states that investigators are "witnesses" and that advisors can question investigators. The relevant slide presentation is entitled, "Virginia Tech Title IX Training, January 10 & 11, 2024," and the relevant slide is reproduced below.

**WHAT ROLE DOES THE INVESTIGATOR PLAY IN A HEARING?**

- The Investigator is often a key witness at any hearing
- The investigation report is admitted as evidence
- The Investigator may be questioned and subjected to cross-exam by all parties' Advisors
  - Why did you decide some evidence relevant; other evidence was not?
- The Investigator's opinions regarding credibility and responsibility should not influence the hearing, so questions about the Investigator's opinions should be avoided; Investigators should not volunteer, and Decision-makers should not probe for, this information

ATIXA  © 2023 Association of Title IX Administrators          97

---

[4] My Advisor asked about Virginia Tech's practice during the Trump Administration to find out if Virginia Tech changed practices when the Biden Administration took over. As you know, the Biden Administration believes that the regulations that are currently in place provide respondents in Title IX cases (most of whom are men) with too much "due process," and many schools, including Virginia Tech, agree with the Biden Administration on that point. _See_ American Council on Education's Comments on the Trump Administration's Proposed Title IX Regulations at 14 (Jan. 30, 2019). However, as a matter of federal law, the current version of the Title IX regulations govern this case.

6

VT-000349

*__Third__*, the applicable Title IX regulation does not define the terms "witness" or "investigator." So, there is no basis for the position that the regulation excludes investigators from the requirement that advisors be permitted to question "any witnesses." (And given that the investigator attends the hearing to orally provide information to the hearing officers and the parties, an investigator is, by definition, a witness. *See Random House Webster's Dictionary* 821 (3d ed. 1993) (defining "witness" as "one who gives testimony")).

*__Fourth__*, when the Department of Education ("DOE") finalized the current version of the applicable regulation, it stated in the preamble to the regulation that the DOE interprets the regulation as meaning that advisors must be permitted to question "investigators" because investigators can be "witnesses." *See* 85 Fed. Reg. 30026, 30314 (stating that "§ 106.45(b)(6)(1) already contemplates parties' equal right to cross-examine any witness, which could include an investigator").[5]

In short, the currently applicable Title IX regulation requires you to permit advisors to question hearing officers. Please confirm that you will permit my advisor to question the hearing officer.

Sincerely,

John Doe

---

[5] When federal agencies such as the DOE issue regulations (also called "rules"), they do so in accordance with the "rule making" process spelled out in the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 551, *et. seq*. Under that process, (1) the agency publishes its bases for the proposed regulation (called a "preamble") and the text of the proposed regulation in the Federal Register and invites the public to submit comments to the proposed regulation; (2) the agency then evaluates the public's comments; and (3) if the agency decides to adopt the regulation, it publishes its responses to the public's comments (the responses are also called a "preamble") and the text of the finalized regulation in the Federal Register. *See* 5 U.S.C. § 553 ("Rule Making"); 1 C.F.R. §18.12 ("Preamble Requirements"). Although statements in a preamble are not officially part of a finalized regulation, they are an authoritative interpretation of the regulation. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019) (stating that courts should defer to an agency's interpretation of its own regulation when the interpretation is, among other things, in a document that reflects "the official position of the agency").

7

VT-000350