# EXHIBIT 48

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

400 MARYLAND AVENUE, SW
WASHINGTON, DC 20202-1475

REGION XI
NORTH CAROLINA
SOUTH CAROLINA
VIRGINIA
WASHINGTON, DC



October 28, 2014

*Via Facsimile (540-231-6231) and U.S. Mail*
Dr. Timothy D. Sands
Office of the President
Virginia Polytechnic Institute and State University
Burruss Hall, Suite 210
Blacksburg, Virginia 24061

Re:    OCR Complaint No. 11-14-2219
Letter of Finding

Dear Dr. Sands:

This letter is to notify you of the outcome of a complaint received by the Office for Civil Rights (OCR) of the U.S. Department of Education (the Department), on March 7, 2014, against Virginia Polytechnic Institute and State University (the University).  The Complainant filed the complaint on behalf of her daughter, a former student at the University (the Student).  The Complainant alleged that the University discriminated against the Student based on sex and retaliated against her.  Specifically, the Complainant alleged:

1.  The University failed to respond in an equitable manner to the Student's complaint of sexual harassment in XXXX.

2.  The University retaliated against the Student by bringing disciplinary charges against her in XXXX after she complained of sexual harassment.

OCR initiated an investigation of the complaint pursuant to its authority to enforce Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq., and its implementing regulation, at 34 C.F.R. Part 106, which prohibit discrimination on the basis of disability in programs and activities that receive federal financial assistance from the Department.  The laws enforced by OCR prohibit retaliation against any individual who asserts rights or privileges under these laws or who files a complaint, testifies, or participates in an OCR proceeding. Because the University receives Federal financial assistance from the Department, OCR has jurisdiction over it pursuant to Title IX.

OCR investigated this complaint by reviewing information provided by the Complainant and Student, and by the University.  OCR also interviewed several administrators who play a role in responding to Title IX complaints at the University.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

*www.ed.gov*

JD-000077

**Legal Standard**

The Title IX regulation at 34 C.F.R. § 106.31 provides generally that, except as provided elsewhere in the regulation, no person shall on the basis of sex be excluded from participation in, denied the benefits of, or subjected to discrimination in education programs or activities operated by recipients of Federal financial assistance.

Under Title IX, colleges and universities that receive Federal financial assistance are responsible for providing students with a nondiscriminatory educational environment.  Sexual harassment that creates a hostile environment is a form of sex discrimination prohibited by Title IX.  Sexual harassment is unwelcome conduct of a sexual nature.  Sexual harassment can include unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature, such as sexual assault or acts of sexual violence.  Sexual harassment of a student creates a hostile environment if the conduct is sufficiently serious that it interferes with or limits a student's ability to participate in or benefit from the recipient's program.[1]

OCR considers a variety of related factors to determine if a sexually hostile environment has been created and considers the conduct in question from both an objective and a subjective perspective.  Factors examined include the degree to which the misconduct affected one or more students' education; the type, frequency, and duration of the misconduct; the identity of and relationship between the alleged harasser and the subject or subjects of the harassment; the number of individuals involved; the age and sex of the alleged harasser and the subject of the harassment, the size of the school, location of the incidents, and the context in which they occurred; and other incidents at the school.  The more severe the conduct, the less the need to show a repetitive series of incidents; this is particularly true if the harassment is physical.  A single or isolated incident of sexual harassment may, if sufficiently severe, create a hostile environment.  A single instance of rape is sufficiently severe to create a hostile environment.  Once a recipient knows or reasonably should know of possible sexual harassment, it must take immediate and appropriate action to investigate or otherwise determine what occurred.  If an investigation reveals that sexual harassment created a hostile environment, a recipient must take prompt and effective steps reasonably calculated to end the harassment, eliminate any hostile environment, prevent the harassment from recurring and, as appropriate, remedy its effects.  These duties are a recipient's responsibility, regardless of whether a student has complained, asked the recipient to take action, or identified the harassment as a form of discrimination.  A recipient has notice of harassment if a responsible employee actually knew or, in the exercise of reasonable care, should have known about the harassment.  If a recipient delays responding to allegations of sexual harassment or responds inappropriately, the recipient's own action may subject the student to a hostile environment.  If it does, the recipient will be required to remedy the effects of both the initial sexual harassment and the effects of the recipient's failure to respond promptly and appropriately.  A recipient's obligation to respond appropriately to sexual harassment complaints is the same irrespective of the sex or sexes of the parties involved.

---

[1] The applicable legal standards described herein are more fully discussed in OCR's 2011 Dear Colleague letter on Sexual Violence, which is available at: http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html (April 4, 2011); for further clarification on this topic, *see "*Questions and Answers on Title IX and Sexual Violence," at http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf (April 29, 2014).  *See also* OCR's 2010 Dear Colleague letter on Harassment and Bullying, which is available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.html (October 26, 2010), and OCR's Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, at http://www.ed.gov/about/offices/list/ocr/docs/shguide.html (January 19, 2001).

JD-000078

Even if the sexual harassment did not occur in the context of an education program or activity, a recipient must consider the effects of the off-campus sexual harassment when evaluating whether there is a hostile environment on campus or in an off-campus education program or activity because students often experience the continuing effects of off-campus sexual harassment while at school or in an off-campus education program or activity.

In situations where reported sexual harassment may constitute a criminal act, a recipient should notify a complainant[2] of the right to file a criminal complaint, and should not dissuade a complainant from doing so either during or after the recipient's internal Title IX investigation. Recipients should not wait for the conclusion of a criminal investigation or criminal proceeding to begin their own Title IX investigation and, if needed, must take immediate steps to protect the complainant in the educational setting. A law enforcement investigation does not relieve the recipient of its independent Title IX obligation to investigate the conduct.

Sexual harassment of a student by a faculty member or other school employee also violates Title IX. If an employee who is acting (or who reasonably appears to be acting) in the context of carrying out these responsibilities over students engages in sexual harassment, the recipient is responsible for remedying any effects of the harassment on the complainant, as well as for ending the harassment and preventing its recurrence. This is true whether or not the recipient has notice of the harassment.

The Title IX regulation, at 34 C.F.R. § 106.8(b), requires recipients to adopt and publish grievance procedures providing for the prompt and equitable resolution of complaints alleging any action that would be prohibited by Title IX, including sexual harassment and sexual assault. Title IX does not require a recipient to provide separate grievance procedures for sexual harassment complaints, including sexual assault complaints. A recipient may use student disciplinary or other separate procedures for these complaints; however, any procedures used to adjudicate complaints of sexual harassment or sexual assault, including disciplinary proceedings, must afford the complainant a prompt and equitable resolution.

In evaluating whether a recipient's grievance procedures are prompt and equitable, OCR reviews all aspects of a recipient's policies and practices, including the following elements that are critical to achieve compliance with Title IX:

1) notice to students and employees of the procedures, including where complaints may be filed;

2) application of the procedure to complaints alleging discrimination and harassment carried out by employees, other students, or third parties;

3) provision for adequate, reliable, and impartial investigation of complaints, including the opportunity for both the complainant and respondent to present witnesses and other evidence;

4) designated and reasonably prompt timeframes for the major stages of the complaint process;[3]

---

[2] The term "complainant" as used throughout this letter refers to an individual who is the subject of alleged sexual harassment, sexual assault or other forms of sexual violence.

[3] OCR evaluates on a case-by-case basis whether the resolution of sexual violence complaints is prompt and equitable. OCR has noted that, based on its experience in typical cases, there is a 60-calendar day timeframe for investigations. "Whether OCR considers an investigation to be prompt as required by Title IX will vary depending on the complexity of the investigation and the severity and extent of the alleged conduct. OCR recognizes that the investigation process may take longer if there is a parallel criminal investigation or if it occurs partially during school breaks. A school may need to stop an investigation during school breaks or between school years, although a school should make every effort to try to conduct an investigation during these breaks unless so doing would

JD-000079

    5)       written notice to both parties of the outcome of the complaint and any appeal; and

    6)       assurance that the recipient will take steps to prevent recurrence of any sex discrimination or harassment found to have occurred, and to correct its discriminatory effects on the complainant and others, if appropriate.

To ensure that students and employees have a clear understanding of what constitutes sexual violence, the potential consequences for such conduct, and how the recipient processes complaints, the recipient's Title IX grievance procedures should also include the following in writing:

1. a statement of the recipient's jurisdiction over Title IX complaints;
2. adequate definitions of sexual harassment (which includes sexual assault) and an explanation as to when such conduct creates a hostile environment;
3. reporting policies and protocols, including provisions for confidential reporting;
4. identification of the employee or employees responsible for evaluating requests for confidentiality;
5. notice that Title IX prohibits retaliation;
6. notice of a student's right to file a criminal complaint and a Title IX complaint simultaneously;
7. notice of available interim measures that may be taken to protect the student in the educational setting;
8. the evidentiary standard that must be used (preponderance of the evidence) in resolving a complaint;
9. notice of potential remedies for students;
10. notice of potential sanctions against perpetrators; and
11. sources of counseling, advocacy and support.

The procedures for addressing and resolving complaints of sexual harassment should be written in language that is easily understood, should be easily located, and should be widely distributed. Pending the outcome of an investigation of a report or complaint, Title IX requires a recipient to take steps to ensure equal access to its education programs and activities and to protect the complainant and ensure his or her safety as necessary, including taking interim measures before the final outcome of an investigation. The recipient should take these interim measures promptly once it has notice of the harassment allegation and should provide the complainant with periodic updates on the status of the investigation. The recipient should notify the complainant of his or her options to avoid contact with the alleged perpetrator and allow the complainant to change academic and extracurricular activities or his or her living, transportation, dining, and working situation as appropriate. The specific interim measures implemented and the process for implementing those measures will vary depending on the facts of each case. In general, when taking interim measures, recipients should minimize the burden on the complainant. Recipients should also check with complainants to ensure that the interim measures are effective and, if ineffective, identify alternatives. Recipients should also ensure that the complainant is aware of his or her Title IX rights and any available resources, such as advocacy, housing assistance, academic support, counseling, disability services, health and mental health services, and legal assistance, and the right to report a crime to campus or local law enforcement.

In addition, recipients should provide training to employees about the applicable grievance procedures and their implementation. All persons involved in implementing a recipient's

---

sacrifice witness availability or otherwise compromise the process." *See* F-8, in "Questions and Answers on Title IX and Sexual Violence."

JD-000080

grievance procedures (*e.g.,* Title IX coordinators, investigators and adjudicators) must have training or experience in handling complaints of sexual harassment, and in the recipient's grievance procedures as well as applicable confidentiality requirements. In sexual assault cases in particular, the fact-finder and the decision-maker also should have adequate training or knowledge regarding sexual assault. Recipients should also provide training about its grievance procedures and their implementation to any employees likely to witness or receive reports of sexual harassment; including faculty, recipient law enforcement unit employees, recipient administrators, recipient counselors, general counsels, health personnel, and resident advisors. Recipients need to ensure that their employees are trained so that they know to report sexual harassment to appropriate officials, and so that employees with the authority to address sexual harassment know how to respond properly.

Throughout the recipient's investigation and in any hearing, both parties must have equal opportunity to present relevant witnesses and other evidence and to otherwise participate in the grievance process. Also, the recipient must use a preponderance of the evidence standard for investigating allegations of sexual harassment. If a recipient provides for appeal of the findings, it must do so for both parties. The recipient must maintain documentation of all proceedings. For Title IX purposes, if a student requests that his or her name not be revealed to the accused or asks that the recipient not investigate or seek action against the accused, the recipient should inform the student that honoring the request may limit its ability to respond fully to the incident, including pursuing disciplinary action against the accused. The recipient should notify students of the information that will be disclosed, to whom it will be disclosed, and why. The recipient should also explain that Title IX includes protections against retaliation, and that school officials will not only take steps to prevent retaliation but also take strong responsive action if it occurs. If the student still requests that his or her name not be disclosed to the accused or that the recipient not investigate or seek action against the accused, the recipient will need to determine whether or not it can honor such a request while still providing a safe and nondiscriminatory environment for all students, including the student who reported the harassment. If the school determines that it can respect the student's request not to disclose his or her identity to the accused, it should take all reasonable steps to respond to the complaint consistent with the request.

When a recipient knows or reasonably should know of possible retaliation by other students or third parties, including threats, intimidation, coercion, or discrimination (including harassment), it must take immediate and appropriate steps to investigate or otherwise determine what occurred. OCR has advised recipients to be aware that complaints of sexual harassment/assault may be followed by retaliation by the alleged perpetrator or his or her associates. For instance, friends of the alleged perpetrator may subject the complainant to name-calling and taunting. Title IX requires recipients to protect the complainant and witnesses and ensure their safety as necessary. At a minimum, this includes making sure that complainants and witnesses know how to report retaliation by university officials, other students, or third parties by making follow-up inquiries to see if any retaliation or new incidents of harassment have occurred and respond promptly and appropriately to address any new problems.

Grievance procedures generally may include voluntary informal mechanisms

JD-000081

(*e.g.*, mediation) for resolving some types of sexual harassment complaints; however, it is improper for a complainant alleging harassment to be required to work out the problem directly with the alleged perpetrator, and certainly not without appropriate involvement by the recipient (*e.g.*, participation by a trained counselor, a trained mediator, or, if appropriate, a university faculty member or administrator).  The complainant must be notified of the right to end the informal process at any time and begin the formal stage of the complaint process.  Moreover, in cases involving allegations of sexual assault/violence, mediation is not appropriate even on a voluntary basis.  OCR recommends that recipients clarify in their grievance procedures that mediation will not be used to resolve sexual assault/violence complaints.

**Allegation 1**

During the course of OCR's investigation, the University expressed a willingness to resolve allegation 1 of the complaint.  Pursuant to Section 302 of OCR's Case Processing Manual, OCR discussed resolution options with the University.  On October XX, 2014, the University signed the enclosed agreement to resolve the allegation 1 of the complaint.  The provisions of the agreement are aligned with the issues raised in allegation 1, with information obtained during the course of OCR's investigation, and are consistent with the applicable regulations.  By fulfilling the terms of this agreement the University will resolve the concerns identified in this complaint and will be considered in compliance with the Title IX regulatory provisions at issue in this complaint.  OCR will monitor implementation of the agreement.

**Allegation 2**

OCR completed its investigation of allegation 2 and determined that there is insufficient evidence to support a finding that the University violated Title IX with regard to the Complainant's allegation of retaliation.

When a University has conducted its own investigation of an allegation, as is the case here, OCR typically does not investigate the allegation anew; rather, OCR reviews the University's actions to determine if the University provided a comparable resolution process, that is, fully investigated the allegation, under the appropriate legal standard, and secured remedies that meet OCR's standards.

Here, the University, specifically the Title IX Coordinator, conducted a prompt and thorough investigation of the Student's allegation of retaliation, determined that retaliation did occur, notified the Student of its determination, and took appropriate remedial steps to address the violation of Title IX.  <XXXX SENTENCE REDACTED XXXX>.  The Student filed her complaint on XXXX.  The Title IX Coordinator completed her investigation and notified the Student via e-mail on XXXX of her determination that XXXX had retaliated against the Student.  The XXXX email further notified the Student that appropriate disciplinary action would be decided by the XXXX department.  Although the University was constrained by personnel rules not to share the nature of the specific disciplinary action with the Student, the University provided information to OCR that confirmed that it took appropriate disciplinary action, as well

JD-000082

as appropriate remedial steps to prevent this type of conduct from occurring in the future. Additionally, XXXX dropped charges raised against the Student.

Accordingly, OCR determined that the University responded in an appropriate manner to the Student's allegation of retaliation by providing a comparable process and remedies.

This concludes OCR's investigation of the complaint. This letter should not be interpreted to address the University's compliance with any other regulatory provision or to address any issues other than those addressed in this letter.

This letter sets forth OCR's determination in an individual OCR case. This letter is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public. The complainant may have the right to file a private suit in federal court whether or not OCR finds a violation.

We have advised the Complainant that the University may not harass, coerce, intimidate, or discriminate against any individual because the individual filed a complaint or participated in the complaint resolution process. If this happens, the individual may file another complaint alleging such treatment. Also, under the Freedom of Information Act, it may be necessary to release this document and related correspondence and records upon request. If OCR receives such a request, we will seek to protect, to the extent provided by law, personal information that, if released, could constitute an unwarranted invasion of privacy.

We appreciate your cooperation during the resolution of this complaint. If you have any questions, please contact Amy Williams, at (202) 453-5933 or at Amy.Williams2@ed.gov, or Sara Clash-Drexler, at (202) 453-5906 or at Sara.Clash-drexler@ed.gov.

Sincerely,

/S/

Alessandro Terenzoni
Team Leader, Team II
District of Columbia Office
Office for Civil Rights

Enclosure

cc:     Pam White, Title IX Coordinator, by e-mail

JD-000083