# EXHIBIT 53



# Policy on Title IX Sexual Harassment and Responsible Employee Reporting

## No. 1026

**Policy Effective Date:**
08/13/2020

**Policy Revised Date:**
10/1/2022

**Policy Owner:**
President Sands

**Policy Author:** *(Contact Person)*
Kelly Oaks
Kim O'Rourke

**Affected Parties:**
Undergraduate
Graduate
Faculty
Staff
Other

**1.0 Purpose**
**2.0 Policy**
**3.0 Procedures**
**4.0 Definitions**
**5.0 References**
**6.0 Approval and Revisions**

# 1.0 Purpose

The university is committed to providing a safe and non-discriminatory environment for living, learning, and working to all members of our community. To that end, the university does not discriminate, nor tolerate discrimination, on the basis of sex or gender. Pursuant to Title IX of the Education Amendments of 1972, this policy exists to eliminate, address, and prevent the recurrence of the prohibited conduct described herein, and provide for a fair and impartial process for making the determination about whether prohibited conduct occurred.

# 2.0 Policy

The university prohibits Title IX Sexual Harassment and Retaliation, as defined by federal regulations promulgated by the United States Department of Education. In compliance with the Department of Education's regulations, the university has adopted a grievance procedure for the resolution of formal complaints that includes notice to all parties, prompt and impartial investigations, and live hearings that include an opportunity for cross-examination by advisors. The university also requires those designated as Responsible Employees to promptly report any violation or alleged violation of this policy.

## 2.1 Application of Policy

This policy applies to all levels and areas of university operations and programs, to undergraduate and graduate students, professional students, administrators, faculty, staff, volunteers, vendors and contractors.

## 2.2 Scope

This university's jurisdiction includes any conduct that occurs within the context of a university Education Program or Activity within the United States. Education Program or Activity means any on- or off-campus locations, events, or circumstances over which the university exercises substantial control over both the Respondent and the context in which the sexual harassment occurs and includes any building owned or controlled by a student organization officially recognized by the university. Individuals who are currently participating in, or attempting to participate in, an Educational Program or Activity of the university may file a complaint under this policy.

Virginia Tech is also committed to the free and vigorous discussion of ideas and issues. This policy does not allow curtailment or censorship of constitutionally protected expression, nor does it attempt to address behaviors that do not constitute discrimination or harassment. Offensive behavior that does not violate this policy should be addressed by the appropriate supervisor or administrator.


The university recognizes that prohibited conduct under this policy may also be prohibited by other university policies, including the university's Policy on Discrimination and Harassment (Policy 1025). In the event other policies may also apply to conduct prohibited under this policy, the procedures as outlined in this policy shall apply.

## 2.2 Title IX Sexual Harassment

Title IX Sexual Harassment[1] means any of the following conduct on the basis of sex:

- a university employee conditioning an educational benefit or service upon a person's participation in unwelcome sexual conduct (i.e. *quid pro quo* harassment);
- unwelcome conduct that a reasonable person would determine to be so severe, pervasive, and objectively offensive that it would effectively deny a person equal access to a university program or activity; or
- Sexual Assault, Dating Violence, Domestic Violence, or Stalking, as each of those terms are defined below.

## 2.3 Retaliation

This policy incorporates the definition of Retaliation defined in Policy 1025 and prohibits any adverse action taken against a person for making a good faith report of Title IX Sexual Harassment or for participating in an investigation or grievance procedure pursuant to a report of Title IX Sexual Harassment. The prohibition does not prohibit or curtail any constitutionally protected rights.

## 2.4 Responsible Employee Reporting

Responsible employees include all university officials who have authority to institute corrective measures in response to a report of Title IX Sexual Harassment. A responsible employee who receives notice of behavior that might reasonably be construed as constituting Title IX Sexual Harassment must promptly report the alleged behavior to the Title IX Coordinator. A responsible employee who receives notice of an alleged Title IX Sexual Harassment and fails to report it to the Title IX Coordinator may be subject to discipline up to and including termination.

Responsible employees under this section include university administrators, supervisors, employees with instructional responsibilities (for their respective teaching obligation), academic advisors, and other university employees who have significant responsibility for student and campus activities or implementing the university's policies related to employee and student discipline.

Virginia Tech has designated several offices on campus as confidential resources. When performing their responsibilities providing services, these offices are not subject to this policy. Confidential resources include the staff at the University Ombuds Office and Graduate School Office of the Ombudsperson, Schiffert Health Center, Cook Counseling Center, and the Virginia Tech Women's Center. Disclosures made to Athletic Doctors while acting within the scope of his or her license or certification are also confidential.

---

[1] This definition is found in 34 CFR 106 In the event of a conflict between the definition provided in this policy and the definition as provided in 34 CFR 106, the 34 CFR 106 definition shall prevail.



## 3.0 Procedures

Complainants who are participating in, or attempting to participate in, Virginia Tech's programs and activities may file formal complaints alleging conduct prohibited under this policy by undergraduate students, graduate students, professional students, administrators, faculty, staff, volunteers, vendors and contractors. The procedures for investigating and resolving formal complaints depend on the Respondent's relationship to the university, and specifically whether the Respondent is a student or an employee. Both sets of procedures follow the same general guiding principles. At a minimum, the procedures:

- Provide for a prompt and equitable response to reports of Title IX Sexual Harassment;
- Start with a presumption of non-responsibility for the Respondent;
- Allow for and require objective evaluation of all evidence;
- Include an option for an emergency interim suspension of a student Respondent that includes the opportunity for appeal of that decision;
- Prohibit anyone who has a conflict of interest or a bias for or against a particular Complainant or Respondent, or Complainants and Respondents generally, from participating as an investigator, Title IX Coordinator, hearing officer, or appellate officer;
- Describe the range of possible disciplinary sanctions and remedies that the university may implement following a determination of responsibility;
- Describe the circumstances in which the university will convene a live hearing to resolve a Formal Complaint, as well as the circumstance in which the Title IX Coordinator will dismiss a Formal Complaint prior to the live hearing phase;
- Set forth the process for the live hearing, including by describing the roles of advisors and hearing officers, and describe the procedural rules that apply during the live hearing phase, including the opportunity for cross-examination;
- Describe the process for appealing formal decisions; and
- Do not require, allow, rely upon, or otherwise use any questions or evidence that constitute or seek disclosure of information protected by a legally recognized privilege.

The procedures used for any complaint against a university student are described in Appendix 1.

The procedures used for any complaint against a university employee are described in Appendix 2.

### 3.1 Title IX Coordinator

The university's Director of Title IX Compliance is designated as the Title IX Coordinator. The Title IX Coordinator is responsible for monitoring institutional compliance with Title IX and with this policy. Questions about Title IX, as well as any concerns or complaints about possible non-compliance with Title IX or with this policy, should be directed to the Title IX Coordinator:

Director of Title IX Compliance and Title IX Coordinator
Office for Equity and Accessibility
Virginia Tech
220 Gilbert Street, Suite 5200
Blacksburg VA 24060
Phone: (540) 231-1824
equityandaccess@vt.edu

The Title IX Coordinator is responsible for coordinating the effective implementation of Supportive Measures; ensuring the university's prompt and equitable response to any formal complaint of Title IX Sexual Harassment; coordinating the university's internal Title IX-related training programs, and maintaining records of Title IX-related complaints and reports and any response thereto in accordance with state and federal laws.

### 3.2 Supplemental/Alternative Avenues for Complaints

In addition to, or in lieu of, the university's procedures, individuals may pursue remedies, as appropriate, through the Office for Civil Rights of the U.S. Department of Education.

We encourage victims of sexual violence, including rape, sexual assault, sexual battery, stalking, and dating and domestic violence, to exercise their right to file a complaint with the Virginia Tech Police Department if the crime occurs on Virginia Tech's property, regardless of the status of the complainant. For crimes occurring away from Virginia Tech's property, victims may contact the local law enforcement in the appropriate jurisdiction.

## 4.0 Definitions

**Complainant** means an individual who is alleged to be the victim of conduct that could constitute Title IX Sexual Harassment.

**Consent** means knowing, voluntary, and clear permission by word or action, to engage in mutually agreed upon sexual activity. The existence of consent is based on the totality of circumstances, including the context in which the alleged consent occurred. Silence does not necessarily constitute consent and coercion, force, or threat of either party invalidates consent.

- Consent cannot be given where a person is incapacitated due to drugs or alcohol; or where a person has a disability; or is not of legal age to consent as defined by law.
- Consent to any one form of sexual activity cannot automatically imply consent to any other forms of sexual activity. Consent can be withdrawn at any time.
- Previous relationships or prior consent cannot imply consent to future sexual acts.

**Dating Violence** means violence committed by a person: (a) who is or has been in a social relationship of a romantic or intimate nature with the victim; and (b) Where the existence of such a relationship shall be determined based on a consideration of the following factors: (1) the length of the relationship; (2). the type of relationship; and (3) the frequency of interaction between the persons involved in the relationship.

**Domestic Violence** means felony or misdemeanor crimes committed by: (a) a current or former spouse or intimate partner of the victim; (b) a person with whom the victim shares a child in common; (c) a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner; (d) a person similarly situated to a spouse of the victim under the domestic or family violence laws of Virginia; or (e) any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of Virginia.

**Respondent** means an individual who has been reported to be the perpetrator of conduct that could constitute Title IX Sexual Harassment.

JD-000195



**Sexual Assault** means misconduct that meets the definition of Rape, Fondling, Incest, or Statutory Rape, as defined below:

- **Rape** means penetration, no matter how slight, of the vagina or anus of a person with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim.

- **Fondling** means the touching of the private body parts of another person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or temporary or mental incapacity.

- **Incest** means sexual intercourse between persons who are related to each other within degrees wherein marriage is prohibited by law.

- **Statutory Rape** means sexual intercourse with a person who is under the statutory age of consent.

**Stalking** means engaging in a course of conduct directed at a specific person that would cause a reasonable person to: (a) fear for the person's individual safety or the safety of others; or (b) suffer substantial emotional distress.

## 5.0 References

University Policy 1025: Policy on Harassment, Discrimination, and Sexual Assault
https://policies.vt.edu/assets/1025.pdf

## 6.0 Approval and Revisions

Policy created as a result of new regulations promulgated by the U.S. Department of Education, effective August 14, 2020.

Approved August 13, 2020, by the Executive Committee of the Board of Visitors.

- Revision 1

  Updates to Appendix 1 and Appendix 2 procedures to reflect updated July 28, 2021 Title IX regulations issued by the U.S. Department of Education's Office for Civil Rights.

  Approved November 8, 2021 by the Virginia Tech Board of Visitors.

- Revision 2

  Update to domestic violence definition in section 4.0 to be consistent with the Violence Against Women Act Reauthorization Act of 2022 effective October 1, 2022.

  Approved August 23, 2022 by the Virginia Tech Board of Visitors.


## Policy 1026 –
## Appendix 1

## Adjudication Procedures for Complaints Against Students

The following procedures apply to the adjudication and potential disciplinary actions related to formal complaints against students for Title IX Sexual Harassment as defined in University Policy 1026 on Title IX Sexual Harassment and Responsible Employee Reporting. These procedures are compliant with the U.S. Department of Education's regulations found in 34 CFR 106. **Future changes to these adjudication and disciplinary procedures must receive approval from the Virginia Tech Board of Visitors**. These procedures are incorporated into the Student Code of Conduct.

**Formal Title IX Adjudication Process**

When the Title IX Coordinator refers a case for formal adjudication, the Office of Student Conduct will hold a live hearing with cross-examination to determine whether the respondent is responsible for the alleged conduct and to provide appropriate sanctions, as appropriate.

### A. Procedural Guarantees

In formal conduct hearings for Title IX formal complaints, the complainant and respondent are entitled to the following procedural guarantees and opportunities:

- To receive a copy of the final investigation report, including any attachments and supporting documents from the Title IX Coordinator or designee at least ten (10) days in advance of the hearing.

- To receive written notice of the date, time, location, participants, and policies charged at least five (5) business days in advance of the hearing to allow the parties sufficient time to prepare for the hearing.

- To be accompanied by an advisor of their choice, at their own cost, or to have an advisor provided to them by the Office of Student Conduct without fee or charge.

- To inspect and review, during the hearing, all evidence obtained during the investigation that is directly related to the allegations in the formal complaint.

- To present that evidence that supports or refutes the alleged conduct.*

- To present witnesses, including fact and expert witnesses.

- To have their advisor conduct live cross-examination on the other party and any witnesses.

- To remain silent or to participate as they see fit, including full, partial, or no participation;

- To challenge the objectivity of a hearing officer(s), given reasonable cause to believe they may be biased or have a conflict of interest.

- To appeal, regardless of the outcome, based on the following grounds: 1) Procedural irregularity; 2) Significant and relevant new information that was not available at the time of the hearing; 3) The Title IX Coordinator, Investigator, or hearing officer(s) had a conflict of interest or bias, which affected the outcome; 4) Unduly harsh or arbitrary findings or sanctions.

*Only evidence and information submitted prior to the final investigation report will be considered during at the hearing.

### B. Advisors



At the hearing, each party may be accompanied by an advisor of their choice, at their own cost (e.g., parent, friend, attorney, etc.); if a party does not have an advisor, the university will provide one to them without fee or charge for the purposes of cross-examination. Advisors may not also serve as witnesses.

Advisors will be permitted to cross-examine (i.e., ask relevant questions and follow-up questions) the other party and any witnesses directly, orally, and in real time. The parties must use their advisors in this capacity, as they will not be permitted to ask questions personally.

Aside from cross-examination, advisors may not speak on the student's behalf or participate actively in the process. Advisors must follow the guidance of the hearing officers.

### C. Cross-Examination

During the hearing, the parties' advisors will be permitted to ask relevant questions and follow-up questions, including those challenging credibility, of the other party and any witnesses. Cross-examination must be conducted directly, orally, and in real time. At no times will the parties directly conduct cross-examination.

<u>Relevance</u>

Questions asked during cross-examination must be relevant to the behavior and situation in question. Hearing officers will determine whether each question is relevant and, if they choose to exclude a question, explain why it is not relevant. The following topics/questions have been identified as automatic exclusions:

- Questions or information about the complainant's prior sexual behavior, unless they are used to prove someone other than the respondent committed the alleged conduct or if they concern previous sexual activity with the respondent and are used to prove consent.

- Questions or information that discloses or seeks to disclose privileged information, such as medical or psychological records.

For more information about relevant information, please refer to the <u>Relevant Evidence</u> section in section A, above.

<u>Declining to Participate in Cross-Examination</u>

If a party or witness declines to be cross-examined during the hearing or is otherwise not available for cross examination, the hearing officers may still consider any statements made by that party or witness during the investigation or hearing when determining whether the respondent is responsible for the alleged conduct. The hearing officers will also not draw conclusions regarding responsibility based solely on a party's or witness's absence from the hearing or decision to decline to answer questions from the hearing officers or during cross-examination.

### D. Recording

The Office of Student Conduct audio records all formal hearings. A copy of the recording is maintained as part of the case file and will be made available to the parties, upon request.

### E. Hearing Location and Virtual Participation

At the discretion of the Office of Student Conduct, a hearing may be conducted in a single physical location, with all parties present, or a hearing may be conducted virtually, with participants appearing via videoconference. If the hearing is held in person (i.e., in a single physical location), either party may request to be located in a separate room and to participate via video conference. Regardless of the participation method, the hearing participants will be able to simultaneously see and hear each other.



## F. Determination of Responsibility

After the hearing, a determination of whether a respondent is responsible for violating any policy in the Code of Conduct will be made by the hearing officers based on the information presented in the investigation report and at the hearing.

Standard of Proof

The university uses preponderance of the evidence to determine whether or not the respondent is responsible for the alleged conduct. This determination is made based on the information available to determine if it is more likely than not that a violation occurred.

Decision Letter

The hearing officer will simultaneously provide the parties the decision in writing. The decision letter will include the following information: allegations and policies charged, procedural steps taken during the grievance procedure, information used to determine the findings and their application to the policies charged, rationales for each finding, any sanctions imposed on the respondent, any remedies provided to the complainant, and information about the appeal process.

## G. Range of Possible Sanctions

If a respondent is found responsible for the alleged conduct, the hearing officers will make a determination regarding appropriate sanctions. One or more of the following sanctions may be imposed:

- Formal warning
- Probation
- Deferred Suspension
- Suspension
- Deferred Dismissal (i.e., deferred expulsion)
- Dismissal (i.e., expulsion)
- Denial of privileges or associations
- Educational, Community, and Wellness Activities

When assigning sanctions, hearing officers consider the type and nature of any policy violation(s), including mitigating or aggravating factors, as well as the student's prior conduct record. Sanctions are generally cumulative in nature.

For definitions and additional information about sanctions in the Student Conduct process, please refer to the *Student Code of Conduct*.

## Remedial Action

Following a hearing, the Director of Student Conduct shall work with the Title IX Coordinator, who will oversee any necessary remedial action to restore or preserve the complainant's equal access to the university's education programs or activities.

## Appeal Process

Both parties have the opportunity to appeal the outcome of a formal hearing in a Title IX case regardless of the outcome. Sanctions take effect immediately, pending the appellate officer's decision or the end of the appeal period.



## H. Grounds for Appeal

Appeals are not re-hearings; therefore, appeal requests are limited to the following grounds:

- Procedural irregularity or denial of procedural guarantees
- Significant and relevant new information that was not available at the time of the hearing
- Conflict of interest or bias by the Title IX Coordinator, Investigator, or hearing officer(s), which affected the outcome
- Unduly harsh or arbitrary findings or sanctions.

Appeals submitted that do not have sufficient grounds in one of these areas will be denied.

## I. Potential Outcomes of an Appeal

The appellate officer will review the appeal and may:

- Uphold the original decision and sanctions
- Uphold the original decision and either decrease or increase the sanction
- Vacate a finding
- Send the case back to the Title IX Coordinator for further investigation
- Send the case back to Student Conduct for a new partial or full hearing

## J. Time Frame to Submit an Appeal

The parties have seven (7) business days from the date of the decision to submit the appeal. The date the decision is given is considered the first day of the appeal period. Appeals submitted after the deadline will not be accepted except in extenuating circumstances, as determined by Student Conduct.

## K. Format of Appeal

The appeal is a written request submitted by the student for a review of the original case. The student should include which grounds for appeal they believe apply, and any information the student wants considered should be included in the written document. The burden is on the appealing party to demonstrate why the finding or sanction should be altered.

## L. Notification to the Other Party

When one party submits an appeal, the Office of Student Conduct will notify the other party and provide them with an opportunity to review the appeal and submit a written statement in response, which will be included in the appeal documentation.

## M. Appellate Officers

An appellate officer will be designated by the Assistant Vice President for Student Affairs, who serves as the university's Chief Appellate Officer. All appellate officers are external to the Office of Student Conduct and Title IX. When they are designated to review a case, the Assistant Vice President will ensure they do not have conflicts of interest or bias and are, therefore, able to review the case objectively.

## N. Appeal Decision Letter

The appellate officer will issue a decision on the appeal in writing to both parties simultaneously. This notification will include a rationale for the decision.


## Policy 1026 –
## Appendix 2

### Adjudication Procedures for Complaints Against Employees

The following procedures apply to the adjudication and potential disciplinary actions related to formal complaints against employees for Title IX Sexual Harassment as defined in University Policy 1026 on Title IX Sexual Harassment and Responsible Employee Reporting. These procedures are compliant with the U.S. Department of Education's regulations found in 34 CFR 106. **Future changes to these adjudication and disciplinary procedures must receive approval from the Virginia Tech Board of Visitors**.

## Formal Adjudication Process

Upon referral of a case for formal adjudication, Office for Equity and Accessibility (OEA) will select from a pool of qualified hearing officers/appellate officers one person to serve as the Hearing Chair and a second person to serve as the Appellate Officer for the case. The designated Hearing Chair will convene and administer a live hearing in accordance with these procedures to determine whether the respondent is responsible for the alleged Title IX Sexual Harassment and, if so, to determine appropriate disciplinary sanctions.

### A    Procedural Guarantees

The complainant and respondent are entitled to the following procedural guarantees prior to and throughout the formal adjudication process to:

- receive a copy of the final investigation report, including any attachments and supporting documents at least ten (10) calendar days in advance of the hearing;
- receive written notice of the date, time, location, participants, and policies charged at least five
- (5) calendar days in advance of the hearing to allow the parties sufficient time to prepare for the hearing;
- be accompanied by an advisor of their choice, at their own cost, or to have an advisor provided to them by the University without fee or charge;
- inspect and review, during the hearing, all evidence obtained during the investigation that is directly relevant to the allegations in the formal complaint;[4]
- present witnesses, including fact and expert witnesses;
- present evidence that supports or refutes the alleged conduct;
- have their advisor cross-examine the other party and any witnesses;
- remain silent or otherwise not participate;
- challenge the objectivity of a hearing officer, given reasonable cause to believe that they may be biased or have a conflict of interest; and
- appeal, regardless of the outcome, based on the following grounds: (1) Procedural irregularity that affected the outcome; (2) New evidence that was not reasonably available at the time of the live hearing that could have affected the outcome; and (3) Conflict of interest or bias of the Title IX Coordinator or deputy Title IX coordinator, the assigned investigator, or hearing officer(s), that affected the outcome.



## B    Title IX Hearing Officers

Upon referral of a case for formal adjudication, the Title IX Coordinator or a deputy Title IX coordinator will select a qualified Title IX hearing officer to serve as the Hearing Chair for that case. The Hearing Chair retains responsibility for, and authority over, the following:

- Convening and administering the live hearing;
- Communicating with participants about the date, time, and location of the hearing;
- Ensuring that the live hearing follows the process set forth in these procedures, and that parties are given the procedural protections and guarantees described above;
- Designating an advisor from the University to be present at the hearing, in case one or both parties do not bring an advisor to the hearing;
- Making determinations about the relevancy of questions posed to witnesses and opposing parties by a party through their advisor;
- Issuing the decision letter to parties; and
- Informing parties of their appeal rights

## C    Advisors

Parties are encouraged to bring an advisor of their choice to the hearing. The purpose of an advisor is to stand in place of their assigned party to ask questions of witnesses and opposing parties, since parties themselves cannot directly ask questions of witnesses and opposing parties. If a party does not have an advisor, the University will provide one to them without fee or charge.

Except when asking questions of witnesses and opposing parties, advisors may not speak on a party's behalf. Advisors must follow the guidance of the Hearing Chair.

## D    Hearing Format

Apart from the requirements of these procedures, University policy, and state and federal law, the Hearing Chair retains substantial latitude to control the format and order of the formal adjudication process, including by taking any action necessary to keep or restore decorum during any live hearing. The Hearing Chair will ensure that the chosen format allows parties to present witnesses, including fact and expert witnesses, present evidence that supports or refutes the alleged conduct, and have advisors cross-examine the other party and any witnesses.

## E    Witness Testimony and Cross-Examination

The Hearing Chair will ensure that both parties have an equal opportunity to present relevant evidence during the live hearing. Additionally, the Hearing Chair will permit each party's advisor to ask relevant questions and follow-up questions, including questions that challenge credibility, of the other party and any witnesses.

Cross-examination must be conducted directly, orally, and in real time. Advisors must allow the Hearing Chair to make a determination about whether a witness may proceed to answer a question before pursuing that question further. Advisors, parties, and witnesses must respect the Hearing Chair's determination with respect to any question that an advisor poses. Parties are prohibited from directly questioning each other or any witness.



*Relevance*

Certain types of evidence will be excluded from consideration during a Title IX investigation or hearing. The Hearing Chair may exclude evidence that tends to suggest that the complainant's allegation is part of a pattern of conduct by the respondent, or evidence that is otherwise confidential or protected by some form of privilege. The Hearing Chair will use discretion to determine whether it is appropriate to consider these types of evidence. Determinations will be made based on the following principles:

- <u>Pattern of Conduct by Respondent:</u> evidence of a pattern of conduct similar in nature by the respondent, either prior to or subsequent to the conduct in question, regardless of whether there has been a finding of responsibility, may be relevant if: the previous incident was substantially similar to the present allegation; the information indicates a pattern of behavior and substantial conformity with that pattern; or the respondent was previously found responsible for a policy violation.

- <u>Information protected by legal privilege:</u> All information that is confidential or protected by a legal privilege is inadmissible in the investigation and hearing, and it will not be considered relevant. This includes all federally recognized legal privileges and any additional privileges recognized by the State of Virginia. These include attorney-client communications, medical and counseling records, and clergy-confessor statements.

When individuals offer their own confidential or privileged information, such as medical records, for an investigation, they will be asked to sign a release for that confidential information. Unless an individual has signed that release, the Hearing Chair will not permit witnesses to answer questions about, request, or share information that is confidential or privileged.

The Hearing Chair has authority to decide whether a witness can answer a question posed by an advisor during a hearing. If the Hearing Chair determines that a particular question is not relevant, then the Hearing Chair will tell the witness not to answer the question and provide a brief rationale for that decision to hearing participants.

The Hearing Chair will automatically prohibit a witness from answering the following kinds of questions:

- Questions that solicit information about or relating to a complainant's prior sexual behavior, unless:
    - the questions are intended to and will have the effect of proving that someone other than the respondent committed the alleged conduct; or
    - the questions are reasonably calculated to prove the existence of consent for the alleged misconduct.
- Questions or information that disclose or seek to disclose privileged information, such as questions relating to a witness's medical or psychological records.

If the Hearing Chair determines that a witness cannot answer a question for one of the reasons described above, then the Hearing Chair will instruct the witness not to answer the question and provide a brief rationale for that decision to hearing participants.

*Refusal to Participate in Cross-Examination*

Parties and witnesses are not required to answer questions or otherwise participate in hearings. The Hearing Chair will not draw an inference, positive or negative, from the decision of a party or witness not to participate in the formal adjudication process.



### F    Recording

The University will create an audio or video recording of any formal hearings. A copy of the recording will be made available to the parties for inspection and review upon request.

### G    Hearing Location and Virtual Participation

At the discretion of the Hearing Chair, a hearing may be conducted in a single physical location, with all parties present, or virtually, with some or all participants appearing via videoconference. If the hearing is held in person (i.e., in a single physical location), either party may request to be located in a separate room and to participate via video conference. Regardless of the participation method, the Hearing Chair will ensure that parties are able to see and hear each other and any witnesses in real time.

### H    Determination of Responsibility

The Hearing Chair is responsible for making the determination about whether there is sufficient evidence to conclude that a respondent's conduct violated the University's Title IX Sexual Harassment Policy.

### I    Standard of Proof

The University uses the preponderance of the evidence to determine whether or not the respondent is responsible for the alleged misconduct. In making the determination about whether there is sufficient evidence to conclude that a respondent's conduct violated the University's Title IX Policy, the Hearing Chair will determine whether it is more likely than not that a violation occurred based on the information presented during the live hearing.

### J    Decision Letter

The Hearing Chair will provide the parties notice of the outcome of the hearing in writing via a decision letter. The decision letter will include the following information: allegations and policies charged, a description of the process and the steps taken during the grievance procedure, information used to determine the findings and the application of the findings to the policies charged, rationales for each finding, any sanctions imposed on the respondent, any remedies provided to the complainant, and information about the appeal process.

### K    Range of Possible Sanctions

The imposition of sanctions is designed to eliminate sexual harassment and prevent future recurrence while supporting the University's educational mission and legal obligations. Sanctions may include educational, restorative, rehabilitative, and punitive components. Some conduct, however, is so egregious in nature, harmful to the individuals involved or so deleterious to the educational process that it requires the imposition of severe sanctions, including suspension or termination of employment from the University.

If a respondent is found responsible for the alleged misconduct, one or more of the following sanctions may be posed:

- Formal warning;
- Probation;
- No contact directives;
- Assignment of alternative worksite;


- Reassignment of position; and
- Recommendation for the imposition of a severe sanction, including demotion, suspension, non-reappointment, and for-cause dismissal.

When assigning sanctions, the Hearing Chair will consider the type and nature of any policy violation(s), including mitigating or aggravating factors. Sanctions are generally cumulative in nature. Nothing in these procedures abrogates post-adjudication rights as provided by state and federal law (i.e., State Grievance Procedure, under Chapter 30 (§2.2-3000 et. seq.) of Title 2.2 of the Code of Virginia; the Office for Civil Rights; and the Equal Opportunity Employment Commission). OEA will coordinate with the respondent's supervisor to ensure the timely implementation of any sanction.

### L    Remedial Action

Following any hearing that results in a finding of responsibility, the Hearing Chair will coordinate with OEA to ensure that the complainant receives any remedial action necessary to restore or preserve the complainant's equal access to the University's education programs or activities. OEA will take any steps necessary to ensure that the complainant's ability to access to the University's education programs or activities is fully restored.

## Appeal Process

Both parties have an equal opportunity to appeal the outcome of a formal hearing in a Title IX case, regardless of the outcome.

### A    Title IX Appellate Officers

Upon referral of a case for formal adjudication, the Title IX Coordinator or a deputy Title IX coordinator will select a qualified Title IX appellate officer to serve as the Appellate Officer for that case.

The Appellate Officer retains responsibility for, and authority over, the following:
- Administering the appeals process in accordance with this section;
- Communicating with participants about the appeals process;
- Ensuring that parties are given an equal and fair opportunity to appeal in accordance with this section;
- Providing simultaneous notice to parties describing the outcome of an appeal in accordance with this section; and
- In the case of an appeal that merits a new partial or full hearing, coordinating with the Title IX Coordinator or a deputy Title IX coordinator as necessary to ensure that a new or partial hearing is convened and administered in a manner that is fair and impartial to both parties.

### B    Grounds for Appeal

Appeals are not re-hearings. Appeal requests must be based on one of the following grounds:
- **Procedural Irregularity:** Procedural irregularity that affected the outcome;
- **New Evidence:** New evidence that was not reasonably available at the time of the live hearing that could have affected the outcome; and
- **Conflict of Interest:** Conflict of interest or bias of the Title IX Coordinator or deputy Title IX coordinator, the assigned investigator, or Hearing Chair, that affected the outcome.



The Appellate Officer will deny any appeal that is not sufficiently grounded in one or more of the bases described above.

## C    Timeframe to Submit an Appeal

Parties have seven (7) calendar days from the date of the decision to submit the appeal. The date that the Hearing Chair sends the decision letter to parties is considered the first day of the appeal period. Appeals submitted after the deadline will not be accepted except in extenuating circumstances, as determined by the Appellate Officer.

## D    Format of Appeal

To appeal, a party must submit a written request using the Appeal Form. The request must state the grounds on which the party seeks to appeal and include a rationale citing any information the party wants the Appellate Officer to consider and describing why the appeal should be granted. The burden is on the appealing party to demonstrate that the finding or sanction should be altered or a new partial or full hearing should be convened.

## E    Notification to the Other Party

When one party submits an appeal, the Appellate Officer will notify the other party and provide them with an opportunity to review the appeal and submit a written statement in response, which will be included in the appeal documentation that the Appellate Officer will consider when making the determination about whether to grant or deny the appeal. The other party will have five (5) calendar days to respond to the appeal. Except in extenuating circumstances the Appellate Officer will not accept a late response.

## F    Potential Outcomes of an Appeal

The Appellate Officer will review all information that parties submit in support of and in opposition to the appeal. The Appellate Officer may:

- Deny the appeal and uphold the original decision and any disciplinary sanctions and remedies;
- Grant the appeal and vacate a finding or findings; or
- Grant the appeal and send the case back to the Title IX Coordinator or deputy Title IX coordinator to identify a Hearing Chair to convene and administer a new partial or full hearing.

The Appellate Officer will issue a decision on the appeal via a letter sent to both parties simultaneously. This notification will include a brief rationale for the decision using the identified appeal basis as the standard for determining the appropriate course of action. Appeals are not *de novo* reviews; instead, the Appellate Officer will rely only on the record and any information that the parties submit in support of or in opposition to the appeal.